147 So.2d 180 (1962)
C.A. RUDISILL, Appellant,
v.
TAXICABS OF TAMPA, INC., a Corporation, Appellee.
No. 3025.
District Court of Appeal of Florida. Second District.
November 16, 1962.
*181 Paul Antinori, Jr., of Fowler, White, Gillen, Humkey & Trenam, Tampa, for appellant.
Charles F. Blake, Tampa, for appellee.
KANNER, Judge.
Consequent upon motion of defendant-appellee, Taxicabs of Tampa, Inc., the court below dismissed the second amended complaint of plaintiff-appellant, C.A. Rudisill, for failure to state a cause of action and entered judgment accordingly, finding that there were insufficient allegations of fact to show that the defendant had undertaken any obligation of bailment or otherwise. It is from this judgment that the appeal was instituted.
Plaintiff sought to recover damages for loss of a brief case. The series of events leading to and attendant upon this loss, as set out in the second amended complaint, began at about 5:00 o'clock on the morning of June 9, 1960. At that time, plaintiff, arriving in Tampa, Florida, by airplane, carried with him a brief case which contained valuable papers and documents. It was averred that defendant is a common carrier for hire having a loading or starting zone at the airport, that one of its agents offered to plaintiff a taxicab for transport to his residence, that plaintiff accepted the offer, entered the taxicab, and sat on the rear seat with his brief case. The allegations continue that by implication, it was agreed between plaintiff and defendant's agent that for valuable consideration defendant would transport plaintiff to his home. It was additionally averred that subsequent to entering the taxicab, plaintiff informed the driver it was necessary that he procure his other personal luggage within the airport terminal and temporarily alighted from the taxi, leaving his brief case on the rear seat and in possession of the driver and that before plaintiff's return to the taxicab, the driver accepted another passenger unknown to plaintiff and drove away, carrying the brief case, although plaintiff attempted to halt him. The complaint set out that plaintiff immediately notified a taxi starter of defendant of the situation, who advised plaintiff he would be unable to locate the taxi driver; and then it was averred that adequate measures were not taken *182 to safeguard the brief case or to insure its return.
In considering the obligation owed by a common carrier for hire, we turn initially to an almost uniformly held principle, adhered to in the case of Chafin v. Atlantic Coast Line R. Co., Fla. 1952, 58 So.2d 185, 32 A.L.R.2d 625. By that tenet, a carrier, upon assuming the complete and exclusive possession, care, custody, and control of baggage, becomes liable as a common carrier with respect to the baggage and is regarded as a practical insurer of it. However, the court in the Chafin case, pointed out that unless the carrier does have exclusive possession, care, custody, and control of such baggage, it is liable only for negligence in failing to exercise reasonable care to protect it from loss or injury. Thus, it may be said that where the carrier does not exercise complete and exclusive custody and control of a passenger's baggage, it is liable only for such injury to or loss of the baggage as was proximately caused by the negligence of the carrier or that of its servants.
Plaintiff does not claim that exclusive possession, care, custody, and control of the brief case was either offered to or assumed by defendant but premises his right to recovery upon negligence. He does not contend or allege that the driver had knowledge of the brief case but concedes in his brief that he did not.
The National Fire Ins. Co. v. Yellow Cab Co. case, 1943, 205 Ark. 953, 171 S.W.2d 927, is relied upon by plaintiff for reversal. A directed verdict in favor of defendant cab company was overthrown on appeal, the court holding that the question of negligence under the facts was one for the jury. Two train passengers, plaintiffs in the cause, were traveling together. Arriving at their destination at 11 a.m., they entrusted their seven pieces of luggage to a station porter or "red cap" and proceeded to the main entrance of the station. With the assistance of the taxi driver and the red cap, they then entered a taxicab. Five pieces of luggage were placed in the passenger compartment, some on the front seat with the driver and some on the floor just behind the front seat. Two large bags, however, were placed by the red cap in the rear trunk compartment. When the cab arrived at the hotel where the driver had been directed, the hotel porters removed the luggage and brought it into the lobby. At all times while the passengers and their baggage were being loaded at the station and unloaded at the hotel, the taxi driver did not leave his seat or assist in any manner. The passengers discovered, after they had entered the lobby of the hotel, that the two large bags were missing. They rushed outside, but the taxi had driven away. A rush telephone call made to the cab company's office followed by other calls during the day brought no results.
It should be noted that the Arkansas case relates to two phases, one of which concerns surrender of baggage to the exclusive custody and control of the carrier under the theory of an insurer and the other of which concerns the negligence doctrine. Since plaintiff here claims only under negligence, we, in considering the Arkansas case, shall deal with that aspect of it. The court there indicated that, while the evidence did not reveal the taxi driver either assisted in placing the bags in the rear trunk compartment or directed the red cap to do so, it was done in his presence. Additionally, reference was made to certain specific evidence that there was a method of communication between the starter at the station and the cab office through which it could be inferred also that there was a method of communication by which the drivers kept in touch with the office. Had these methods of communication been employed promptly, said the court, the loss might have been averted.
A comparison of the Arkansas case with the one at bar reveals several distinguishing factors. There, the luggage, consisting of seven pieces, was of a conspicuous quantity and size, the items lost having been two large bags. These were not, as is true of *183 the brief case of plaintiff here, carried by and retained in the custody of their owners. Also, in that case, the baggage was loaded into the cab in the presence of the taxi starter, who, with the red cap, actually assisted the passengers into the cab. Specific evidence in the Arkansas case revealed the existence of a method of communication between the office of defendant and its starter and, inferably, between the cab driver and the office. The hour was 11 a.m.; the time of plaintiff's arrival at the airport terminal in the present case was 5 a.m. Here, from the express allegation that the starter advised plaintiff "* * * he would be unable to locate said driver of the taxi", a reasonable inference could be drawn that the taxi starter lacked the method or means to do so. There is nothing whatever in the second amended complaint through which one could infer that the taxi starter did have a way by which the driver could have been reached. Had this been the case, there is no reason why plaintiff should not have alleged it.
For purposes both of comparison with and contrast to the Arkansas case and the one here reviewed, we find as interesting certain aspects of the Clark v. Checker Taxi Co. case, 1953, 330 Mass. 20, 110 N.E.2d 849, even though the facts there are distinguishable. The Massachusetts court affirmed an order of dismissal where the court had found the passenger failed to prove that the taxicab operator was negligent after he discovered a purse which the plaintiff had left in a taxicab and which was divested of its monetary contents before the driver was located and directed to return it to her. Agents of defendant involved were the taxi driver in whose cab the purse was left and a dispatcher of defendant who was notified of the loss and who conveyed notice to the driver by two way radio facilities of defendant. There was evidence that before the driver returned the purse to plaintiff, he had conveyed another passenger. The court pointed out that ordinarily a passenger leaving articles in a taxicab cannot recover from the carrier unless the passenger shows that the subsequent loss was due to failure of the carrier to exercise reasonable care for protection of the articles after it discovered that they had been left by the passenger. The passenger in the Clark case, as was true of plaintiff here, retained possession of the lost article up to the time it was left in the cab. The court commented that the burden was on the plaintiff to prove lack of care by defendant. Concluding that the lower court had properly found the plaintiff had failed to prove negligence by the operator, the Massachusetts court stated it did not know when the defendant's operator first learned that the purse was in the taxicab, whether before or after he had conveyed another passenger, or whether the money had been removed before he knew of the presence of the purse in his vehicle. Until that time, said the court, the defendant could not be held liable as bailee.
In the Massachusetts case, therefore, the dispatcher of defendant was notified, had the means to and did reach the driver; but that person had already conveyed another passenger so that the notice to the dispatcher, thence to the driver was of no avail. In the Arkansas case, the cab office was notified; the evidence indicated existence of methods of communication; there was a failure to use these methods promptly after notice. In the present case, notice from plaintiff to the starter was given but it is not shown whether the starter had the means to contact the driver. Thus, there is the factual common denominator in the Arkansas and Massachusetts cases represented by a showing in each that there was a method of communication whereby the one notified was able to reach the one who might have remedied the loss. In the present case, the second amended complaint is totally silent upon this subject.
Essentially, a bailment is a consensual transaction arising out of a contract express or implied; and before there can be any bailment, there must be an acceptance by the bailee of the goods which are the subject of the bailment. See Stuart v. D.N. Kelley & Son, 1954, 331 Mass. 76, *184 117 N.E.2d 160. The Massachusetts court reasoned, as to creation of a bailment relationship, "It is plain the law does not thrust upon one the liabilities of a bailee without his knowledge or consent, and equally obvious that while an acceptance may be implied the law will not infer such until there is something to show notice or knowledge of the alleged bailee that the goods are in fact in his possession." The Florida Supreme Court, in the case of State ex rel. Burr v. Jacksonville Terminal Co., 1925, 90 Fla. 721, 106 So. 576, held that the liability of a common carrier for baggage of passengers begins with the delivery of such baggage to and the express or implied acceptance by the carrier and not before.
In summary, that which the trial judge had before him in considering defendant's motion to dismiss the second amended complaint was contained within the allegations, the essence of which we have stated. The only knowledge shown was that given to the taxi starter immediately after departure of the cab with plaintiff's brief case; this was followed with plaintiff's blanket allegation that defendant did not take "adequate" measures to safeguard the brief case or to insure its return to plaintiff after having knowledge of the circumstances. This blanket allegation constitutes a conclusion. Negligence may flow from an act of omission as well as of commission. Generally, to state actionable negligence, a plaintiff must allege ultimate facts showing the relationship out of which a duty is implied by law and sufficient acts or omissions causing the injury, coupled with the averment that they were negligently done. See 23 Fla.Jur., Negligence, sections 103, 104, pages 336, 337; Raphael v. Koretzky, Fla.App. 1958, 102 So.2d 746.
In order for plaintiff's second amended complaint to have stated a cause of action, there should have been shown a lack of reasonable care. To show this, the allegations should have contained the omission or omissions upon which were founded plaintiff's averment that adequate measures were not taken. We agree with the trial judge that the facts averred failed to set out sufficiently that the loss was proximately caused by the negligence of defendant.
Affirmed.
ALLEN, Acting C.J., and WHITE, J., concur.