WALDEN, Judge.
This case concerns the bailment and subsequent damage of a boat. In August of 1963 Plaintiff, Dathan E. Wells, had defendant, Hypoluxo Marine, Inc., take his boat out of the water and place it on a cradle. The boat was kept on Hypoluxo Marine’s premises where plaintiff, his family and friends worked on the boat over the next few months. Plaintiff paid storage fees for the boat to Hypoluxo Marine.
Plaintiff fell ill and halted his regular repair efforts but continued to inspect his boat in a cursory fashion from time to time. He performed some more work in July or August 1964, then ceased entirely. He did continue regular visits to view the boat at monthly or bimonthly intervals until the time he finally removed the boat in July of 1966.
In the early part of 1966, some five months before removal of the boat, Hypo-luxo Marine, Inc., sold its marina to defendant, Empire Tool Company. No notice.of the change in ownership was given to plaintiff. Plaintiff continued to make his monthly storage payment to Hypoluxo Marine. The last rental statement sent to plaintiff at the time he removed his boat was headed simply “Hypoluxo Marine” as before, but contained in smaller print the subheading, “Division of Empire Tool Company.”
When plaintiff took possession of his boat he discovered many items missing, and, in addition, discovered over $660.00 in damage to the boat itself.
Plaintiff filed suit on a bailment theory against both Hypoluxo Marine and Empire Tool Company, alleging that his boat had been left for storage but had been returned in a damaged condition. Plaintiff made no attempt to allocate the responsibility for the damage between the two defendants.
Final judgment was awarded against both defendants in the amount of $936.72 and against Hypoluxo Marine for an additional *78 $67.45. Empire Tool Company appeals. We affirm.
Two issues have been presented. First, Empire Tool challenges the applicability of the bailment theory, arguing that a complete delivery was not sufficiently established.[1] This contention is not well founded. Although the evidence was not entirely without conflict, there was substantial evidence of delivery. We see no reason to disturb the trial court’s resolution on this point.'
The other question presented is whether recovery was properly granted despite plaintiff’s admission that he was not aware of the condition of the bailed boat when Empire Tool Company took over the operation of the marina.
Empire Tool argues that plaintiff completely failed to show the delivery of the boat in good condition since the complaint, and proofs were directed at showing good condition only at the inception of the bailment with Hypoluxo Marine, when the boat was first put into storage, and not at the time when Empire Tool took over the marina.
We would answer this contention by pointing out that plaintiff was never notified of the change in identity of the bailee. He did not receive a bill with Empire Tool Company’s name on it until his boat was about to be removed, some five months after the property had changed hands. Nor had Empire Tool removed the sign at the entrance to the Marina which said, “Hypoluxo Marine, until after plaintiff removed his boat. In short, Empire Tool failed to put plaintiff on notice that the first bailment had ended or that the parties to the original bailment had changed.
When Empire Tool acquired Hy-poluxo Marine, it knew or should have known the plaintiff’s boat was on its property. Empire Tool billed the plaintiff for storage and accepted payment therefor. Certainly this constituted a constructive or implied acceptance of the bailment by Empire Tool.[2] As a constructive bailee Empire Tool had the duty to preserve, restore and to account for the property which was the subject of its bailment.[3]
When Hypoluxo Marine was acquired by Empire Tool, it transferred to Empire the bailment which circumstances indicate constituted an acceptance by Empire Tool.
As transferee (and bailee) Empire Tool held the property in the same manner as the original bailee.[4] A successor bailee for hire assumes the same obligations and duties as the original bailee unless the bailment is terminated with notice and there is a surrender of possession and control of of the bailed property.[5]
Certainly under these circumstances Empire Tool had an affirmative duty to notify the plaintiff if they expected to escape or limit their liability in regard to the bailment. Its silence under these special circumstances estopped it and its successors from denying the bailment.[6] Hence, in the absence of such notice, a successor *79 bailee may not avoid liability for damage to bailed goods by demanding strict proof of when the damage occurred.
Affirmed.
CROSS, C. J., and OWEN, J., concur.

. See generally, 4 Fla.Jur., Bailments, § 11.

. Rudisill v. Taxicabs of Tampa, Inc., Fla.App.1962, 147 So.2d 180; 8 Am. Jur.2d, Bailments, § 60.

. Southern Industrial Savings Bank v. Greene, Fla.App.1969, 224 So.2d 416.

. An assignment or transfer by a bailee conveys only Ms interest in the property and the transferee will hold the property in the same manner as the original bailee. 8 Am.Jur.2d, § 95, p. 994.

. See King v. Cressap, 1870, 22 La.Ann. 211; Warwick v. Macchiaroli, 1929, 96 Cal.App. 133, 273 P. 1109. For a discussion of the liability of successor bailees, see annotations at 27 A.G.R. 68, et seq.

. Ennis v. Warm Mineral Springs, Inc., Fla.App.1967, 203 So.2d 514; Neal v. Gregory, 1882, 19 Fla. 356. Also see 28 Am.Jur.2d, Estoppel and Waiver, § 53.