In the Matter of The INTERNATIONAL GOLD BULLION EXCHANGE, INC., a Florida corporation, et al., Debtors.

Earl FAIRCLOTH, Trustee, Plaintiff,

v.

John GIORGETTI, Defendant.

Bankruptcy Nos. 83–00754–BKC–SMW to 83–00756–BKC–SMW.
Adv. No. 85–0196–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Aug. 29, 1985.

Stewart P. Chambers, Fort Lauderdale, Fla., for plaintiff.

Michael W. Ullman, North Miami Beach, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause having come on before the Court on August 21, 1985, upon the Complaint of the Trustee to avoid a preferential transfer pursuant to Section 547 of the Bankruptcy Code and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises does hereby make the following Findings of Fact and Conclusions of Law.

On April 27, 1983, The International Gold Bullion Exchange, Inc. (the "Debtor"), filed its Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code. The Debtor and the Defendant had entered into a contract on August 31, 1982, for the sale and purchase of 30 one hundred ounce silver bars and 70 one ounce gold Krugerrands. The Defendant paid the Debtor the purchase price of $52,250.00 (composed of $2,834.00 in cash together with 30 one hundred ounce silver bars and 65 gold Krugerrands with a then cash equivalent value of $49,425.00) on September 7, 1982. The Debtor issued to the Defendant a Precious Metals Certificate of Ownership on September 7, 1982.

On March 14, 1983, after repeated demands by the Defendant, the Debtor delivered to the Defendant 3,000 one ounce silver bars and 70 one ounce gold Krugerrands which, together with two checks previously issued by the Debtor to the Defendant on February 28, 1983 in the respective amounts of $3,325.00 and $4,995.00, was intended by the Debtor to be in adjusted satisfaction of the August 31, 1982 precious metals contract.

■ The Court finds that the Complaint alleges all of the elements required under Section 547 of the Bankruptcy Code. *Matter of Advance Glove Mfg. Co.*, 42 B.R. 489 (Bankr.E.D.Mi.1984); *In re Saco Local Development Corp.*, 30 B.R. 870 (Bankr.D. Me.1983); *In re Satterla*, 15 B.R. 166 (Bankr.W.D.Mi.1981). The Courts finds that the Defendant received the property of the Debtor in satisfaction of the antecedent debt created on September 7, 1982, and that the date of delivery of the precious metals was within ninety (90) days next preceding the filing of the Petition by the Debtor for Chapter 11 protection, as is required under Section 547(b)(4)(A) of the Code. Additionally, the Court finds that the Defendant's receipt of these precious metals allowed the Defendant to receive more than he would have received had the Debtor filed its Petition under Chapter 7 of

the Code (Liquidation) and there had been a distribution to unsecured creditors under said Chapter. The Court further finds that the Debtor was insolvent on the day of the Debtor's transfer of its precious metals to Defendant, under the presumption of insolvency under Section 547(f) of the Code, which presumption the Defendant left unrebutted.

The Court considered the following Affirmative Defenses, all others either having been abandoned or deemed to be without merit:

(1) The within action by the Trustee is barred under Section 547(c)(2) of the Code as being a transaction in the ordinary course of business;

(2) There was no transfer of the Debtor's assets by virtue of the existence of a contract of bailment as between the Debtor and the Defendant on September 7, 1982, the date the Defendant received from the Debtor the Precious Metals Certificate of Ownership.

■ The Court finds that the evidence and testimony does not support the Defendant's Affirmative Defenses outlined above. The said transaction does not come within the purview of Section 547(c)(1) of the Code. The Defendant introduced no evidence that the Debtor received anything constituting new value which enhanced the Debtor's estate and which was contemporaneously exchanged for the precious metals shipment on March 14, 1983. Thus, there existed no contemporaneous exchange for new value which would bar the Trustee's avoidance powers under Section 547 of the Code.

■ In addressing the Affirmative Defense of bailment, a contract for bailment requires that there be a mutual agreement between the parties for a bailment and that, further, there be an actual physical delivery of the items to be bailed into the hands of the bailee. *Puritan Insurance Company v. Butler Aviation-Palm Beach, Inc.*, 715 F.2d 502 (11th Cir.1983); *Blum v. Merrill Stevens Dry Dock Company*, 409 So.2d 192 (3rd DCA 1982); *Rudisill v. Taxi Cabs of Tampa, Inc.*, 147 So.2d 180 (2nd DCA 1962). The Court finds with respect to the precious metals purchased for cash that the evidence does not support the existence of any agreements for bailment and, further, that the Debtor never possessed the precious metals purchased by the Defendants until March 14, 1983, the date of transfer of the subject precious metals.

■ Consistent is the Court's further finding, with respect to the 30 one hundred ounce silver bars and the 65 one ounce gold Krugerrands entrusted by the Defendant to the Debtor under the August 31, 1982 contract, that any agreement for storage or bailment between the Defendant and the Debtor as to said gold and silver was lawfully abrogated under Section 672.2–403(2) and (3), Fla.Stat. Those Sections provide as follows:

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under criminal law.

The evidence clearly shows that the Debtor, as a merchant which dealt in the sale and purchase of precious metals, applied the Defendant's gold and silver to other purposes immediately upon receipt of the gold and silver and never stored it for the account of the Defendant in its vault. The evidence also shows that the Debtor's shipment of its own 3,000 one ounce silver bars and 65 one ounce gold Krugerrands to the Defendant on March 14, 1983 was intended by the Debtor to replace the Defendant's 30 one hundred ounce silver bars and 65 one ounce gold Krugerrands. Accordingly, no bailment of this silver existed and the March 14, 1983 gold and silver shipment of

**60**

the Debtor's assets in satisfaction of the August 31, 1982 precious metals contract.

Lastly, the Court concludes that the value of the subject precious metals on the day they were received by the Defendant was $70,975.00.

In summary, the Court finds that the Trustee is entitled to judgment against the Defendant for the return of the aforedescribed precious metals and property of the Debtor or, in the alternative, in the event the Defendant fails to return same within ten (10) days from the date of the Court's Final Judgment rendered herein, the Trustee shall be entitled to a Final Judgment for the value of said precious metals.