Jimmy SMITH, Administrator of The Estate of James Albert SMITH, d/b/a CRESCENT LIQUOR STORE, and ALCOHOLIC BEVERAGE CONTROL BOARD *v.* RIDGEVIEW BAPTIST CHURCH, Inc.

74-120                                    514 S.W. 2d 717

Opinion delivered October 21, 1974

*Murphy, Carlisle & Taylor,* for appellants.

*Bob I. Mayes* and *Truman H. Smith,* for appellee.

FRANK HOLT, Justice. The appellant Alcoholic Beverage Control Board granted appellant Smith's petition to transfer a retail liquor license to within 200 yards of appellee church. The trial court reversed the Board's action pursuant to Ark. Stat. Ann. § 48-310 (Repl. 1964) which, in pertinent part, reads:

> No new permit shall be issued for the location of a business within two hundred (200) yards of any church ****.

Appellants assert for reversal that this statute § 48-310 (§ 2 of Act 352 of 1939) was illegally enacted by the legislature. Therefore, the appellant Board's "Regulation #124" (as authorized by Ark. Stat. Ann. § 48-203 [c] [Repl. 1964]), which requires the retail outlet to be only in excess of 100 yards (and not 200 yards) from church property, is controlling as to the required distance. Appellants rely upon *Matthews* v. *Bailey, Governor,* 198 Ark. 830, 131 S.W. 2d 425 (1939), to the effect that Act 352 is invalid. The appellee, however, argues that *Matthews* is not the latest expression on the validity of the Acts enacted in 1939 and that decision is no longer authoritative or binding. We agree with the appellants that § 48-310 is invalid.

On January 4, 1939, the governor appointed the Honorable Paul Gutensohn to fill a vacancy in the Arkansas State Senate. This procedure, however, was in direct conflict with a mandate by the electorate as reflected by Amendment 29, § 1, Ark. Const. (1874). Two months previous to the appointment this constitutional Amendment was enacted and in pertinent part reads: "Vacancies in the office of **** the

general assembly \*\*\*\* shall |not| be filled by the governor." Subsequent to this obviously invalid appointment, the senate enacted Act 352 of 1939 (§ 48-310) by a vote of 18 to 11. It is stipulated that Gutensohn's vote was one of the 18. Therefore, without his vote the Act would not have received the necessary majority vote of the senate as is required by Art. 5, § 2, Ark. Const. (1874). Now, after approximately 36 years, the validity of this particular Act is squarely presented for the first time by this appeal. *Bell* v. *Adams*, 243 Ark. 895, 422 S.W. 2d 691 (1968). However, we are not without precedent as to the validity of a legislative act voted upon by Gutensohn during the 1939 session. In *Matthews, supra,* the issue was whether the emergency clause of Act 4 of 1939 was validly adopted. Gutensohn's vote constituted the required majority. We held that he was neither a *de jure* nor *de facto* senator. We said:

> It will be conceded that the governor has not the power to appoint members of the Legislature, and has never had. As an express condemnation of the policy of appointing, Amendment No. 29 to the Constitution was adopted November 8, 1938, and became effective thirty days thereafter.

In determining Gutensohn was not a *de facto* official, we further said:

> We find no case of our own holding that legislation enacted by the vote of a stranger to the Senate or the House is sacrosanct.

> There are no instances where it has been said that designation by appointment contrary to the Constitution shall have the force of election, or that the admitted right of the Senate and the House to judge of the qualifications, returns and election of members goes to the extent of nullifying the Consitution. Those elected to the General Assembly take an oath to support the Constitution, and there is no presumption that senators and representatives do not intend to adhere to the basic. law, and they do attempt to obey it.

\*\*\*\*\*

> The general rule is that when an official, person or body, has apparent authority to public office, and apparently exercises such authority, and the person so appointed enters on such office, and performs its duties, he will be an officer *de facto*, notwithstanding there was want of power to appoint in the body or person who professed to do so, or although the power was exercised in an irregular manner.

Then we emphatically said:

> In the instant case there was no *apparent* authority to appoint Gutensohn; and, although the latter served energetically and with a high degree of intelligence, the service was not that of of a senator; nor could he have been a *de facto* officer in view of the want of apparent authority by the appointive agency.

In *Trussell* v. *Fish*, 202 Ark. 956, 154 S.W. 2d 587 (1941), the county assessor appointed an ineligible deputy. We held that since the assessor had the appointive authority, although exercised improperly or ineffectively, the appointee deputy was a *de facto* official, citing *Matthews, supra,* but distinguishing it on the basis that the appointing officer there had neither actual nor apparent authority.

Appellee vigorously asserts that Matthews was overruled either specifically or by implication in *Pope* v. *Pope,* 213 Ark. 321, 210 S.W. 2d 319 (1948). (See also *Howell* v. *Howell; Stevens* v. *Stevens,* 213 Ark. 298, 208 S.W. 2d 22 [1948] which followed the reasoning in *Matthews* with reference to *de jure* and *de facto* officials.) In *Pope* the issue was the validity of Act 42 of 1947 where the legislature created a division of chancery court and at the same time appointed a chancellor to serve in this division.

The court held in *Pope* and *Howell-Stevens* that the naming of a chancellor was unconstitutional and beyond the legislature's power. However in *Pope,* contrary to *Howell-Stevens,* we held the chancellor named by the legislature to a *de jure* position constituted a *de facto* official and, therefore, the chancellor's acts as a judge were lawful.

We cannot agree with appellee that *Matthews,* when applied to the case at bar where the pertinent facts are vir-

tually identical, is not binding and controlling. In *Matthews* we said it is an invalid appointment and contrary to our constitution. In doing so we declined to give a *de facto* status to this appointment because there was not even "apparent authority" for the governor to make the appointment. In fact, the appointment was specifically prohibited by a very recent amendment.

It is stipulated, as was said in *Matthews*, that although the senate is the "sole judge" of the qualifications and election of its members, Ark. Const., Art 5, § 1, there was no finding by the senate that Gutensohn was a member of that body. Neither was he compensated as other members. Only by a special act of the legislature was payment provided. Furthermore, we have construed Amendment 29 as being an "express condemnation" by the people as to the practice of the governor to appoint members to the general assembly. *Matthews.* We are unwilling to recede from our decision in *Matthews* and specifically hold that it has not been overruled, either specifically or by implication, since the issue there, as here, concerned the validity of the appointment by the governor to the legislature. We unequivocally held the appointment was without *apparent authority* and contrary to the constitution. Therefore, the appointee's vote was that of a "stranger" and without a *de facto* basis. It is well established that the legislature is deemed cognizant of our decisions respecting statutory interpretation whenever it enacts legislation. The legislature, during the intervening 36 years since our decision in 1939, has met biennially and sometimes in extraordinary sessions. Apparently it has not considered it necessary to correct the obviously invalid 1939 enactment. To the contrary, the appellant Board has continued to exercise its legislative authority in formulating regulations such as the pertinent one in the case at bar. Regulaion 124 as authorized by § 48-203 (c).

It follows that it becomes unnecessary to discuss appellant's other contention that the trial court had no jurisdiction in that appellee did not comply with the terms of the Administrative Procedure Act.

Reversed and remanded.

Harris, C.J., dissents.