**Michael MANDEL, Plaintiff,**

v.

**UNITED STATES of America, Boy Scouts of America, and Insurance Company of North America, Defendants.**

**Civ. No. 80–3025.**

United States District Court,
W. D. Arkansas,
Harrison Division.

Aug. 6, 1982.

Morris J. Levin, Levin & Weinhaus, St. Louis, Mo., Robert C. Compton, Brown, Compton & Prewett, Ltd., El Dorado, Ark., for plaintiff.

J. Michael Fitzhugh, Asst. U. S. Atty., Fort Smith, Ark., Donald J. Adams, Adams, Covington & Younes, Harrison, Ark., W. W. Bassett, Jr., Bassett, Bassett & Bassett, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### Introduction

Plaintiff instituted this action on June 23, 1980, against the United States of America, pursuant to 28 U.S.C. § 1346(b), commonly known as the Federal Torts Claims Act, and against the Boy Scouts of America and its insurer, Insurance Company of North America, pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship.

On August 20, 1980, defendant, Boy Scouts of America, was dismissed from the action and plaintiff was allowed to proceed against defendant, Insurance Company of North America, pursuant to Ark.Stat.Ann. § 66–3240.

On February 8, 1982, and March 23, 1982, defendants, United States of America and Insurance Company of North America, respectively, moved for summary judgment. Plaintiff has timely responded and the issues are ripe for resolution. The Court has carefully considered the pleadings, the briefs of the parties, and discovery relevant to the issues raised, and makes the findings

of fact and conclusions of law set forth below, separately stated.

## FINDINGS OF FACT

1. Plaintiff is a citizen and resident of the State of Missouri.

2. This claim arises under 28 U.S.C. § 1346(b) and 28 U.S.C. § 1332.

3. Defendant, Insurance Company of North America, is the insurer of former defendant, Boy Scouts of America. Arkansas' direct action statute, Ark.Stat.Ann. § 66–3240, is applicable to the facts.

4. Plaintiff alleged that while on certain property owned by the National Park Service within the boundaries of the Buffalo National River, he decided to go in swimming at Kyle's Landing.

5. Kyle's Landing is located within the boundary of Camp Orr, adjacent property to the National Park Service Property, and is owned by the Boy Scouts of America.

6. Plaintiff dove into the water and struck his head on a submerged rock four or five feet beneath the surface, causing the injuries and damages of which he complains.

7. Plaintiff alleges that employees of the National Park Service and the Boy Scouts of America knew that persons would use the facility with their permission, and failed to adequately warn divers of the presence of submerged rocks.

8. Two weeks prior to the accident, plaintiff was advised by uniformed personnel that the place of the accident was a place in which others regularly swam. Christopher Kirby, a counselor for the Boy Scouts of America, agreed to assist plaintiff in locating a safe place in which to swim upon plaintiff's return to the area.

9. The United States had no knowledge of plaintiff's presence on the property on the date in question. Neither did it have reason to be aware of plaintiff's presence on the property on that date.

10. Plaintiff was engaged in the recreational use of the land where the injury occurred. Plaintiff used the land for such purposes without charge, and was so engaged at the time of the injury.

11. Neither defendant had knowledge of the submerged rock. Similarly, neither defendant had reason to know of the existence of the submerged rock. Neither did they have reason to believe that a foreseeable injury was likely or probable.

12. There is no evidence of willful or malicious failure to guard or warn against a dangerous condition on the part of the Boy Scouts of America or the United States.

13. There is no evidence of willful or wanton conduct on the part of the Boy Scouts of America or the United States.

14. The evidence does not admit of the slightest doubt that a genuine issue of material fact is not presented.

## DISCUSSION

Plaintiff alleged in his complaint that while on certain property owned by the National Park Service within the boundaries of the Buffalo National River, he decided to go in swimming at Kyle's Landing. Kyle's Landing is located within the boundary of Camp Orr, adjacent property to the National Park Service property owned by the Boy Scouts of America. Plaintiff dove into the water and struck his head on a submerged rock causing the injuries and damages of which he complains.

Plaintiff alleged that employees of the National Park Service and the Boy Scouts of America knew that persons would use the facility with their permission, and failed to adequately warn divers of the presence of submerged rocks, and failed to properly mark or otherwise delineate safe diving areas.

The United States argues that the Buffalo River is a non-navigable river. Therefore, says the government, the riparian landowner holds title to the center of the stream. Thus, the argument continues, the Boy Scouts of America owned all of the property involved, and therefore the United States could not be liable for injuries sustained outside its property.

Defendant, Insurance Company of North America, asserts that the Buffalo River is a navigable river. Therefore the riparian owner's title extends only to the high water mark of the river. Since the Boy Scouts of America lack control or ownership, defendant argues that it was under no duty to the plaintiff.

The discovery undertaken by the parties shows that plaintiff was employed by the Jewish Community Center Association of St. Louis, Missouri, as a Hobbying Counselor, and was concerned with locating a safe spot for the young campers to swim. Approximately two weeks prior to the accident, the plaintiff and others had been in the same locale when some person, assumed to be a Park Ranger, advised him that others regularly swam at the place of the accident.

On this same earlier trip, plaintiff met Christopher Kirby, employed by the Boy Scouts of America as a counselor. Christopher Kirby, because of his knowledge of the area, agreed to assist plaintiff and the other counselors upon their return to the Buffalo River National Park. Christopher Kirby joined plaintiff's group and they decided to swim where the Park Ranger had recommended, a place where Christopher Kirby and the Boy Scouts regularly swam and dived.

At this location there is a rope swing affixed to a tree on the bank. In the river itself is a large rock frequently used as a place from which to dive into the river. Plaintiff dived, hit his head on a rock, broke his spinal column cord at the C–6 level, and became permanently quadriplegic.

Plaintiff notes that the boundary between Camp Orr and the National Park is not marked in any way; certain brochures published by the National Park Service available at Ranger Stations depict the entire area as being part of the Buffalo National Park under the superintendency and direction of the United States Park Service; and various National Park Service signs are posted on the premises of Kyle's Landing.

Thus, plaintiff, citing several cases from other states, argues that liability for injuries caused by defective premises attaches to any party who has asserted or maintained control over the premises. Plaintiff asserts that the same rule attaches where one encourages others to enter or utilize certain property.

In response, defendant, Insurance Company of North America, contends that the issue of navigability governs ownership of the place of injury, and that the proper categorization of plaintiff as trespasser/licensee/invitee under Arkansas law shows that no duty was owed to the plaintiff, and hence the Boy Scouts of America as insured, could not be liable as a matter of law. Both defendants contend that, in any event, neither of the defendants can be liable to plaintiff because of the provisions of Ark.Stat.Ann. § 50–1101 *et seq.*

Ark.Stat.Ann. § 50–1101 *et seq.*, commonly referred to as Arkansas' "Recreational Use Statute," provides:

The purpose of this act [§§ 50–1101—50–1107] is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

Ark.Stat.Ann. § 50–1102(c) defines "recreational purpose" as including, non-exclusively, the following: hunting, fishing, swimming, boating, camping, picnicing, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic or scientific sites.

Ark.Stat.Ann. § 50–1103 limits liability thusly:

Except as specifically recognized by or provided in [§ 50–1106] of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on such premises to persons entering for such purposes.

Liability is further limited by Ark.Stat. Ann. § 50–1104:

Except as specifically recognized by or provided in [§ 50–1106] of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such person.

The standard of care is set forth in Ark. Stat.Ann. § 50–1106:

Nothing in this act limits in any way liability which otherwise exists:

(a) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

\*   \*   \*   \*   \*   \*

This standard of care is essentially that stated in AMI 1101, *i.e.*, actual or deliberate intention to harm or conduct which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others.

Thus, under the statute, which the Court finds to be applicable to the undisputed facts in this case, neither defendant, United States, nor the insured of INA owed any duty to the plaintiff other than the duty not to willfully or maliciously cause injury.

Before applying the facts which are not in dispute to the applicable statute, it is appropriate to deal with plaintiff's contention that the Arkansas Recreational Use Statute is not available to defendant United States as a defense. Plaintiff argues that the recreational use statute is inapplicable to a National Park, established and funded by the United States, *citing Miller v. United States*, 442 F.Supp. 555 (N.D.Ill.1976).

In *Miller*, the Court construed the Illinois "Recreational Use of Land and Water Areas Act" and concluded that it was applicable only to those who permit open lands to be used recreationally on a casual basis.

The Court felt that those who hold their property out to the public for recreational purposes were not subject to the act.

However, the rationale of this conclusion is far different from anything presented here. In *Miller*, the Court said:

The Act provides that a landowner who permits his land to be used for recreational purposes has no duty of care to keep the premises safe for use for recreational purposes or to warn those who use his land for recreational purposes of any dangerous condition thereon. (Section 33.) The Act does not, however, limit the landowner's liability for "willful or malicious failure to guard or warn against a dangerous condition . . . ." (Section 36(a).)

There was also in effect in Illinois at the time of the occurrence in question, the Recreational Area Licensing Act. *Ill. Rev.Stat.* ch. 111½, §§ 761–785. This Act contemplates comprehensive safety and health regulations in respect to persons who operate recreational areas which are defined in such a way as to encompass an area like the Crab Orchard National Wildlife Refuge.

This is not to say that the Illinois General Assembly could directly regulate the defendant's maintenance and operation of the wildlife refuge. But if the wildlife refuge were in private ownership (or under Section 762(e) of the Recreational Area Licensing Act owned by an "individual, . . . partnership, corporation, . . . county, municipality, the State of Illinois, or any political subdivision or department thereof, or any other entity"), its maintenance and operation would be subject to the Recreational Area Licensing Act and its owner would not be entitled to the asserted protection of the Recreational Use of Land and Water Areas Act.

*Id.* at 560.

Thus, the Illinois Recreational Use of Land and Water Act was deemed inapplicable because of the applicability of a separate licensing scheme.

The entire legislative scheme should be read *in pari materia*. When it is, it be-

comes clear that the Recreational Use of Land and Water Areas Act is intended for those who permit open lands to be used recreationally on a casual basis. But those who hold their property out to the public for recreational purposes, and maintain their property for recreational use by the number of persons that are prerequisite to the application of the Recreational Area Licensing Act, they are subject to the provisions of the latter and not entitled to the asserted protection of the former.

*Id.* at 561.

This Court is unaware of any such comprehensive licensing scheme in force in the state of Arkansas, and both parties are silent on this point.

■ *Miller* makes clear that the United States "stands in the same shoes" as a private individual for purposes of the Federal Tort Claims Act.

Defendant, under the Federal Tort Claims Act, is entitled to the benefit of that law which would apply to a "private individual under like circumstances." 28 U.S.C. § 2674.

*Id.* at 561.

Accordingly, as the law of Illinois and the law of Arkansas differ significantly because of Illinois' licensing scheme, *Miller* is no precedent for the proposition that the Arkansas "Recreational Use Statute" is inapplicable in this case.

Plaintiff urges that the Court in *Miller* went further:

If we were to reach a contrary conclusion in respect to the application of the Recreational Use of Land and Water Areas Act, we would nevertheless find that plaintiff had proved defendant was at fault. Under the Act a landowner remains liable for "willful or malicious failure to guard or warn against a dangerous condition ...." (Section 36(a).) The statute has not been construed by the Illinois courts. But similar statutory language in the Illinois Structural Work Act (*Ill.Rev.Stat.* ch. 48, §§ 60–69) has been construed by the Illinois Supreme Court.

Section 69 of the Structural Work Act provides for a right of action for "injury to person ... occasioned by any willful violations of this act ...." The Illinois Supreme Court has held that a "willful violation" of the Structural Work Act occurs whenever "by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known." *Kennerly v. Shell Oil Co.*, 13 Ill.2d 431, 439, 150 N.E.2d 134, 139 (1958). "The essence of the Structural Work Act is not limited to the concept of knowing or intentional or even to reckless disregard. Liability is imposed where the existence of dangerous conditions could have been discovered by reasonable care." *Tenenbaum v. City of Chicago*, 11 Ill.App.3d 987, 1000, 297 N.E.2d 716, 723 (1st Dist. 1973), *aff'd in part, rev'd on other grounds*, 60 Ill.2d 363, 325 N.E.2d 607 (1975).

*Id.* at 561.

Therefore, plaintiff concludes, liability may be imposed under the "Recreational Use Statute" where the existence of dangerous conditions could have been discovered by reasonable care.

■ This Court is unaware of any Arkansas cases interpreting the language of Ark. Stat.Ann. § 50–1106(a): "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity."

However, the Arkansas courts have many times defined "willful and wanton conduct." This is defined as requiring that defendant

[K]new or reasonably should have known in the light of the surrounding circumstances that his conduct would *naturally or probably result in injury* and that he continued such conduct in reckless disregard of the consequences .... [emphasis added]

AMI 401; *Shearer v. Newsom*, 250 Ark. 33, 463 S.W.2d 642 (1971).

Acting "willfully and wantonly" is synonymous with "willful misconduct." *Scott v. Shairrick*, 225 Ark. 59, 279 S.W.2d 39 (1955);

*Steward v. Thomas,* 222 Ark. 849, 262 S.W.2d 901 (1953).

We can think of no reason why "willful and wanton" and "willful misconduct" would likewise not be synonymous with "willful or malicious." If the legislature of the state of Arkansas wished to impose upon recreational landowners the duty which the court in *Miller* felt the Illinois legislature had imposed there, it could easily have so declared. We may only assume that the Arkansas legislature knew the meaning attributed to these terms by the Arkansas courts at the time of enactment. *Williams v. Edmondson,* 257 Ark. 837, 520 S.W.2d 260 (1975); *Smith v. Ridgeview Baptist Church,* 257 Ark. 139, 514 S.W.2d 717 (1974). Where a statute is plain and unambiguous the courts may not construe it to mean other than what it says. *Weston v. State,* 258 Ark. 707, 528 S.W.2d 412 (1975). We may infer that the legislature intended "willful and malicious" to have the same meaning as "willful misconduct." The Arkansas Supreme Court has applied the doctrine of "*noscitur a sociis,*" which means "it is known from its associates" so as to define a term by an accompanying word. *Weldon v. Southwestern Bell Tel. Co.,* 271 Ark. 145, 607 S.W.2d 395 (1980).

Therefore, plaintiff must show (1) that defendants' conduct would naturally or probably result in injury; (2) that defendants knew or reasonably should have known that their conduct would so result in injury; and (3) that defendants continued such course of conduct in reckless disregard of the consequences.

Further, it has been held that the conscious disregard defined by "wilfull and wanton" conduct must be a disregard of the *foreseeably* injurious consequences. *Great American Ins. Co. v. Ratliff,* 242 F.Supp. 983 (E.D.Ark.1965).

Plaintiff asserts that the conduct of the defendants in permitting the use of a swimming hole where there was a hidden danger in the form of a submerged rock in close proximity to a diving area constitutes a willful and wanton failure to guard against a dangerous condition. At the site of the accident, the Buffalo River is approximately nine feet deep. The hidden rock that plaintiff struck was four to five feet beneath the surface. The submerged rock is within the main stream of the pool.

Chief Ranger Moseley stated: "There is nothing presently nor was there on August 1, 1978, indicating that it was either safe or unsafe to swim in the river at the accident location . . . ."

Plaintiff argues that the defendants never made any effort to ascertain the existence of a hidden rock four or five feet below the surface of the water.

Plaintiff argues:

Had Mr. Brown (park technician) with face mask, snorkel and fins, examined the pool prior to August 1, 1978, and discovered the submerged rock in such close proximity to the diving rock, adequate warning of the danger could and surely would have been given.

(Plaintiff's Supp. Brief, p. 7)

As noted, plaintiff must show that defendants knew or should have known of the dangerous condition and the probability of injury. Plaintiff concedes that neither defendant knew of the hidden rock:

*This was the first time any employee of the United States Government or of the Boy Scouts of America had ever viewed and located a submerged rock in a nine-foot pool of water in which swimmers dropped from a rope swing and dived from a convenient rock well above the surface of the water.* [Emphasis in original]

(Plaintiff's Supp. Brief, p. 4)

Thus, plaintiff must show that defendants should have known of the rock and of the likelihood of injury. Plaintiff admits that the rock was hidden at least four feet below the surface and that there was no indication whatsoever of its presence. How, then, may it be said that defendants should have known of the existence of the rock? Obviously, only by doing what plaintiff suggests—putting on a mask, fins, and snorkel and meticulously performing a topographical survey of the bottom of the river.

The question becomes—does a riparian landowner who permits others to enjoy the recreational use of his waterway have a duty to examine the depths of the river without any prior or present indication of danger. And if so, does a failure to do so constitute willful and malicious conduct?

We think not on both counts.

Analogously, does a riparian landowner, knowing canoeists frequently float by and through his land, have a duty to make a contour map of the river bed so as to warn the canoeists of the existence of rocks or the speed of the water? If so, no one in their "right mind" would allow others to float across their land at the risk of being held liable for willful or malicious conduct, and punitive damages. This clearly violates both the purpose and language of the statute.

■ Even if the landowner does have the duty which plaintiff seeks to impose, which the Court believes to be unreasonable, such failure cannot constitute willful and malicious conduct without some indication, however slight, of hidden danger. To hold otherwise would be to confer upon such a user of land or water the status of an invitee or, perhaps impose even the greater duty of an insurer. The duty of the owner to use reasonable care to see that the premises do not contain hidden dangers is the duty owed an invitee. *Little Rock Land Co. v. Raper*, 245 Ark. 641, 433 S.W.2d 836 (1968). Such a result is precluded by the provisions of Ark. Stat.Ann. § 50–1104(b).

As stated in the act, the purpose of the Arkansas Recreational Use Statute is to "encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability towards persons entering thereon for such purposes." The plaintiff asks that the Court impose upon landowners who allow waterways crossing their land to be used by the public a duty to don a facemask, fins, and snorkel, and survey the bed of such waterway for hidden dangers such as rocks, sudden drop-offs, deceptive undercurrents and the like, without the slightest indication of the presence of such. To impose

such a duty, in spite of the provisions of the Arkansas Recreational Use Statute, would certainly not promote its purposes and would, in the Court's view, place the law in such a state that such a landowner would be foolish to allow his lands to be used by any person for recreational purposes.

The Court believes that the undisputed facts in this case eliminate any possibility the defendant, United States, or the insured of defendant, Insurance Company of North America, acted willfully or maliciously to cause injury to plaintiff. Accordingly, we hold as a matter of law, that the alleged conduct or omission of the defendants does not meet the "willful and malicious" requirement imposed by the Arkansas Recreational Use Statute in order for the landowners to be liable.

Since the Court has so held, it is not necessary to determine which of the defendants was the owner of the riverbed in which the accident occurred and, thus, not necessary for the Court to discuss and rule on the navigability of the Buffalo River.

### Requirements of Rule 56, FRCP

■ A summary judgment under Rule 56 is an extreme remedy which should be sparingly employed. Any doubt as to whether there is an issue of material fact for trial should be resolved against the moving party. *Williams. v. Chick*, 373 F.2d 330 (8th Cir. 1967). The material offered in support or opposition to a motion for summary judgment may not be employed to resolve disputed factual issues, but only to determine whether any issues are in dispute. *U. S. ex rel. Jones v. Rundle*, 453 F.2d 147 (3rd Cir. 1971); *Carter v. Williams*, 361 F.2d 189 (7th Cir. 1966). Summary judgments are precluded as long as the "slightest doubt" remains as to the facts. *Clausen & Sons, Inc. v. Theo Hamm Brewing Co.*, 395 F.2d 388 (8th Cir. 1968); *Armco Steel Corp. v. Realty Inv. Co.*, 273 F.2d 483 (8th Cir. 1960).

Thus, were it not for Ark.Stat.Ann. § 50–1101 *et seq.*, the status of plaintiff at the time of the injury would be a genuine issue of material fact. But because of sec-

tions 50–1103, 50–1104 and 50–1106, the only *material* factual issue is whether the United States or the Boy Scouts of America acted willfully or maliciously toward the plaintiff, and injured him thereby.

The materials submitted do not admit of the "slightest doubt" that such a possibility is not present. In the kind of case defined by Rule 56, where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, "summary judgments are looked upon with favor." *Freeman v. Continental Gin Co.,* 381 F.2d 459 (5th Cir. 1967).

Suffice it to say that the evidence presented on the motions is not subject to conflicting interpretations, *Chenette v. Trustees of Iowa College,* 431 F.2d 49, 53 (8th Cir. 1970), and defendants are entitled to judgment on their motions.

A judgment in accordance with the above will be concurrently entered.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter. 28 U.S.C. § 1346(b), 28 U.S.C. § 1332, Ark.Stat.Ann. § 66–3240.

2. The Buffalo National River was established by the Act of March 1, 1972, 16 U.S.C. § 460m–8, in order to preserve unique scientific and scenic features of one of America's declining number of free-flowing rivers.

3. Arkansas has adopted the Arkansas Recreational Use Statute (sections 50–1101 to 50–1107) and such act was in full force and effect at the time of the occurrence which is the subject matter of this law suit. The purpose of such act is to encourage owners of land to make land and water areas available to the public for recreational purposes. Recreational purposes include, but are not limited to, the following: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites. Ark.Stat. Ann. §§ 50–1101, 50–1102(c).

4. Under the statute, which the Court finds to be applicable, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on such premises to persons entering for such purposes without charge. Ark.Stat. Ann. § 50–1103. Nor does an owner of such property who directly or indirectly invites or permits without charge any person to use such property for recreational purposes thereby extend any assurance that the premises are safe, confer upon such person the legal status of an invitee or licensee, nor assume liability for injury to person or property. Ark.Stat.Ann. § 50–1104(a), (b), (c).

5. The owner of land used by others for recreational purposes without charge owes only a duty not to injure such persons by willful or malicious conduct or by willful or malicious failure to warn of danger. Ark. Stat.Ann. § 50–1106(a).

6. Under the statute, Arkansas does not impose a duty of sub-surface investigation upon riparian owners who neither know or have reason to be aware of dangerous water conditions, hidden rocks, dangerous pitfalls, or the like, where the landowner makes his land available for recreational purposes without charge.

7. The evidence presented on the motions does not admit of the slightest doubt that a genuine issue of material fact is not present with regard to the liability of either defendant. *Clausen & Sons, Inc. v. Theo Hamm Brewing Co.,* 395 F.2d 388 (8th Cir. 1968).

8. There are no genuine issues of material fact presented, and defendants are entitled to judgment as a matter of law. Rule 56 Fed.R.Civ.P.

A separate judgment in accord with this memorandum opinion will be concurrently entered.