## Michael TUNE v. Jennifer CATE

89-194                                          781 S.W.2d 482

### Supreme Court of Arkansas
### Opinion delivered December 18, 1989

*James M. McCord*, for appellant.

*George E. Butler, Jr.*, for appellee.

TOM GLAZE, Justice. This case involves a paternity proceeding which was originally heard and decided by a paternity referee and the Washington County Judge. On November 2, 1988, they entered an order finding appellant the father of Mallory Cate, born on January 24, 1987, and among other things, appellant was ordered to pay $25.00 per week. On December 2, 1988, appellant filed what he labeled a "prayer for an appeal" to the Washington County Circuit Court, and the county judge by court order granted the appeal on the same date.[1] On January 16, 1989, appellee, Mallory's mother, moved to dismiss appellant's appeal, stating the appellant had failed to file an appeal bond as required by law. Appellant responded, asserting no bond was necessary. By

---

[1] The "prayer" was accompanied by an affidavit stating that the appeal was not taken for the purposes of vexation and delay.

letter opinion, the Washington County circuit judge held that an appeal bond was required, and subsequently entered an order dismissing appellant's appeal to circuit court upon finding the appellant had failed to post such a bond.

The sole issue here is whether appellant was required to file an appeal bond in order to perfect an appeal to circuit court from the referee's and county judge's November 2, 1987 order. Two statutes, Ark. Code Ann. §§ 9-10-106 and -10-117 (1987), bear on this question and set forth the appeal procedure in paternity actions to the circuit court. Section 9-10-117 was enacted in 1875 and subsection (b) of that statute provides that no appeal shall be granted until an appeal bond, with affidavit, is filed. That provision has been interpreted to mean that there could be no valid appeal without the filing of a bond. *See Epperson v. Sharp*, 222 Ark. 456, 261 S.W.2d 267 (1953).

Appellant contends that § 9-10-106, which was enacted in 1977 and amended in 1983, authorized the county court to appoint a paternity referee to hear paternity proceedings and, in so doing, provided for an appeal procedure that required no bond. In making his argument, appellant cites § 9-10-106(d)(1) and (d)(4) which provide as follows:

> (d)(1) Appeals from any decision of the paternity referee may be taken as a matter of right to the circuit court in the county in which the case was decided by causing the record to be filed with the clerk of the circuit court within thirty (30) days after the decision of the paternity referee is rendered.

> \* \* \* \*

> (d)(4) Every person shall have the right to post an appeal bond in such amount and under such conditions as the paternity referee shall, in his discretion, determine.

Appellant does not contend that § 9-10-106 supersedes § 9-10-117, but instead argues that when a county judge decides the paternity issue, the party appealing the decision must post a bond; however, if a referee decides the issue, no bond is necessary. We find no logic to such reasoning.

■ First, appellant's argument ignores the language in § 9-10-106(c) which provides the decisions of the paternity referee shall be binding upon the county judge and such order or *judgment shall have the same effect as a decision by the county judge*. Clearly, by such statutory language, the General Assembly in no way intended to provide a preferential or different treatment to appeals from decisions made by referees as opposed to those made by county judges. As noted above, § 9-10-106(d)(4) merely provides every person *shall have the right to post an appeal bond* and only the amount and conditions of such a bond are left to the discretion of the referee. We find nothing in the provisions of § 9-10-106 which alleviates the posting of an appeal bond in paternity proceedings.

■ Second, it is well established that the General Assembly is deemed cognizant of this court's decisions respecting statutory interpretation whenever it enacts legislation, *Smith* v. *Ridgeview Baptist Church*, 257 Ark. 139, 514 S.W.2d 717 (1974), and that being so, the General Assembly was fully aware that we had already construed § 9-10-117 as requiring a bond when perfecting an appeal from a paternity action. *Epperson*, 222 Ark. 456, 261 S.W.2d 267. Nonetheless, in enacting § 9-10-106, the General Assembly gave no indication that it intended to dispense with bonds in appeals from paternity decisions, but instead merely reiterated that which was already provided in § 9-10-117, *viz.*, that every person shall have the right to post an appeal bond.

Sections 9-10-106 and -10-117 involve the same subject matter and when construing them together, as we must, the intent of the General Assembly is evident that an appeal bond is required under both provisions regardless of whether the paternity action is decided by a referee or county judge.

In the present case, both the paternity referee and county judge entered the order determining appellant was Mallory's father and fixing support payments at $25.00 per week. Interestingly enough, the county judge, not the referee, was the one who granted an appeal. In any event, no mention of an appeal bond was made by either the referee or county judge and for that

reason, the circuit judge dismissed appellant's appeal.[2] The judge was correct, and we affirm.

---

[2] In the transcript, we do find the referee and county judge's order finding paternity and fixing support did refer to a security bond for the payment of child support ordered by the county court.