LAWHON FARM SERVICES, et al. *v.* James R. BROWN

CA 97-289 958 S.W.2d 538

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered December 22, 1997

66

*Friday, Eldredge & Clark*, by: *Betty J. Demory*, for appellants.

*Teresa A. French*, for appellee.

MARGARET MEADS, Judge. This is an appeal from a decision of the Workers' Compensation Commission that awarded dependency benefits. Appellant contends the Commission erroneously interpreted Ark. Code Ann. § 11-9-527 (Repl. 1996), and there is no substantial evidence to support the Commission's finding that the decedent's children are entitled to benefits. We affirm.

James R. Brown was killed in an automobile accident on June 7, 1994, while within the scope of his employment. Mrs. Lucinda Penick, his former wife, brought a claim for dependent

workers' compensation benefits on behalf of their three children, Jamie Lee, born January 28, 1977, Melva Sue ("Susie"), born June 19, 1979, and Angela Marie, born February 23, 1981. Appellant denied the claim on the basis that the children were not dependent on the decedent and not entitled to benefits under a strict construction of Ark. Code Ann. § 11-9-527(c).

At the hearing on the claim, Mrs. Penick testified that she and Mr. Brown were divorced in January 1993; that she was awarded custody of Jamie; and that Mr. Brown was awarded custody of Susie and Angela. No child support was ordered from either party. Mr. Brown supported Susie and Angela, and he bought clothing and school supplies for Jamie, and occasionally gave Jamie money.

In the summer of 1993, Mr. Brown asked Mrs. Penick to send Susie and Angela to school in McGehee; the girls came to live with Mrs. Penick; and Mr. Brown moved to McCrory. Mr. Brown bought school clothing and supplies for all the girls. Although Mr. Brown refused to give Mrs. Penick money or to pay child support until ordered to do so, he gave the girls money, brought groceries to the house, provided money for gas, and gave them furniture he no longer needed. In August 1993, Mrs. Penick began having problems with Susie, and Susie went to live with Mr. Brown.

Mrs. Penick testified that she tried to obtain child support through the Child Support Enforcement Unit because Mr. Brown refused to give her any money, and she was unable to provide what the girls needed. He gave the children money, but they would "just blow it" and not buy the things that they needed.

In January 1994, Susie returned to live with Mrs. Penick. Subsequently, Mrs. Penick went to Juvenile Court in an attempt to obtain child support, but Mr. Brown never appeared in court. Sometime after April 1994, Mrs. Penick contacted an attorney to obtain child support from Mr. Brown, but she had not yet initiated a chancery court proceeding when Mr. Brown died. She said that she needed assistance in supporting the children, and she expected to get it from Mr. Brown.

Mr. Brown did not see the children from January 1994 until he died in June. Mrs. Penick told him that they wanted to see him, but he said he did not have time, that he went to work early and got off late, and that he had to work. Mrs. Penick asked him for money; he said he would send a money order, but he never did. She testified that he was angry at her because she wanted child support and that he had cut off contact with her because she had attempted to obtain child support.

Debra Wiggins, Mr. Brown's daughter with whom he lived after January 1994, testified that he provided no support for the girls after that time. She also testified that although he did not see the girls after January, he really could not go anywhere because of the hours he was working.

The administrative law judge held that the children were entitled to an award of dependency benefits pursuant to Ark. Code Ann. § 11-9-527(c)(3). The full Commission affirmed the law judge and held that the children were "wholly" and "actually" dependent upon the decedent. The Commission was not persuaded that previous judicial interpretations of "wholly and actually dependent" conflicted with Act 796, and it refused to depart from them. It stated:

> We accept Mrs. Penick's testimony as credible, and specifically find therefrom that decedent has, in fact, provided varying degrees of support to his minor children both as a custodial and non-custodial parent. From that same evidence, we also specifically find that Mrs. Penick, after she had assumed the primary custodial role, made efforts to pursue some form of official child support remedy prior to decedent's death. Also, given the maintenance needs of school-aged children in a modernized society, and taking into account that decedent's minor children have, in fact, needed school supplies, clothes, and other items which he provided (at least in part) while alive, we specifically find that the necessary expenses of decedent's minor children will naturally increase as they grow older. In light of the above, we are persuaded to specifically find that decedent's minor children had a "reasonable expectation of future support" from him, and were accordingly "actually," as well as "wholly," dependent upon him at the time of his death in a work-related accident.

Appellant first argues that the Commission erred in its interpretation of Act 796 of 1993 and Ark. Code Ann. § 11-9-527(c), which provides that "compensation for the death of an employee shall be paid to those persons who were wholly and actually dependent upon the deceased employee." According to appellant, Act 796's mandate of strict statutory construction repeals prior case law and prohibits dependency benefits in this case. Appellant urges us to adopt the dictionary meaning of the words "wholly" and "actually" and to hold that in order for a person to be entitled to dependency benefits a person must prove that, at the time of the compensable injury which caused death, they were "entirely or completely and in fact or reality" dependent upon the decedent for support. Appellant says the statute mentions nothing about reasonable expectation or a moral obligation of a parent to support his child.

Under the legislative declaration of Act 796, "all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act" are nullified (Ark. Code Ann. § 11-9-1001 (Repl. 1996)). Also, "administrative law judges, the Commission, and any reviewing courts shall construe the provisions of [the Arkansas Workers' Compensation Law] strictly." (Ark. Code Ann. §§ 11-9-704(c)(3) (Repl. 1996)). Prior to Act 796, workers' compensation provisions were construed "liberally." (Ark. Code Ann. § 11-9-704(c)(3) (Supp. 1991)).

■ ■ In *Vanderpool v. Fidelity & Cas. Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997), the rules of statutory construction were set forth:

> In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. The basic rule of statutory construction to which all other interpretive guides defer is to give effect to the intent of the legislature. As a guide in ascertaining legislative intent, this court often examines the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretation, and all other matters of common knowledge within the court's juris-

> diction. Furthermore, in construing any statute, this court will place it beside other statutes relevant to the subject matter in question, giving it meaning and effect derived from the combined whole.

327 Ark. at 415, 939 S.W.2d at 284-85 (citations omitted). Moreover, the Workers' Compensation Commission is an administrative agency, and as a general rule administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than are courts to determine and analyze legal issues affecting their agencies; therefore, while not conclusive, the interpretation of a statute by an administrative agency is highly persuasive. *Olsten Kimberly Quality Care v. Pettey*, 55 Ark. App. 343, 934 S.W.2d 956 (1997). An administrative agency's interpretation of a statute or its own rules will not be overturned unless it is clearly wrong. *Arkansas Dep't. of Human Servs. v. Hillsboro Manor Nursing*, 304 Ark. 476, 803 S.W.2d 891 (1991).

Dependency benefits were originally payable to persons who were "wholly dependent" upon a deceased employee. The courts interpreted the term "wholly dependent" in the statute (then Ark. Stat. Ann. § 81-1315(c) (Supp. 1951)) as applying to those ordinarily recognized in law as dependents, including children. *Chicago Mill & Lumber Co. v. Smith*, 228 Ark. 876, 310 S.W.2d 803 (1958).

In 1976 the Legislature amended § 81-1315(c) to provide that dependency benefits are payable to persons who were "wholly and actually dependent" upon the deceased employee. "Actually dependent" was then interpreted to require some showing of actual dependency; dependency is a question of fact to be determined in light of prior events; it is not controlled by an unusual temporary situation. *Roach Mfg. Co. v. Cole*, 265 Ark. 908, 582 S.W.2d 268 (1979). "Actually dependent" does not require total dependency; it requires a showing of actual support or a reasonable expectation of support. *Porter Seed Cleaning, Inc. v. Skinner*, 1 Ark. App. 230, 615 S.W.2d 380 (1981).

In 1993, the Legislature again amended the Workers' Compensation Law. However, no changes were made to survivor benefits except to increase the funeral expense benefit from $3,000 to

$6,000 and to modify the effective date. Thus the new provisions regarding survivor benefits are virtually the same as the old.

 It can hardly be said that the Legislature in making the sweeping changes to our workers' compensation law in 1993 was unaware of our interpretation of the words "wholly and actually dependent." *Roach, supra. See also, Williams v. Edmondson,* 257 Ark. 837, 520 S.W.2d 837 (1995); *Tune v. Cate,* 301 Ark. 66, 781 S.W.2d 482 (1989); *Smith, Admr. v. Ridgeview Baptist Church,* 257 Ark. 139, 514 S.W.2d 717 (1974). Yet, case law interpreting these words was not expressly overridden (*see* Ark. Code Ann. §§ 11-9-107(e), 713(e) (Repl. 1996)), and the dependency benefit provisions of prior law were not substantively changed. Moreover, the declaration of legislative intent regarding the new Act, found in Ark. Code Ann. § 11-9-1001 (Repl. 1996), provides:

> The Seventy-Ninth General Assembly intends to restate that the major and controlling purpose of workers' compensation is to pay timely temporary and permanent disability benefits to all legitimately injured workers that suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force. . . . It is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any . . . courts of this state contrary to or in conflict with any provision in this act.

The legislative intent as expressed in this section contains nothing to support the view that prior case law in regard to dependency benefits was repealed.

 As to appellant's argument that a person must prove that they were entirely and "in fact" dependent upon the decedent for support, we note that although the 1976 amendment to Ark. Stat. Ann. § 81-1315(c) imposed the additional requirement that the decedent's spouse establish "in fact" some dependency upon the deceased employee before being entitled to death benefits, no such requirement was imposed for child beneficiaries. Indeed, in *Roach, supra,* our supreme court held that a ten-year-old child who was being supported by her mother at the time of her father's death was actually dependent upon her father. Although her

mother had taken no legal action to obtain support for the child, our supreme court held that with respect to the child, the lapse of eleven months without legal action on the mother's part did not demonstrate that there was no longer any reasonable expectation of support from the father. Because the child's necessary expenses would naturally increase as she grew older, her mother might not be able to maintain her in her accustomed mode of living, and the child could not act for herself, our supreme court found a reasonable expectation of future support and held that the child was entitled to dependency benefits.

 Appellant asks that we adopt the dictionary definition of the words "wholly" and "actually." However, we are not limited to the dictionary definition of a term. *Bill Fitts Auto Sales, Inc. v. Daniels*, 325 Ark. 51, 922 S.W.2d 718 (1996). Indeed, it has been held error to take the definition of a word from the dictionary rather than from the Workers' Compensation Act and the appellate cases which have construed and interpreted it. *Williams v. Cypress Creek Drainage*, 5 Ark. App. 256, 635 S.W.2d 282 (1982).

 Moreover, the adoption of appellant's definition of "wholly and actually dependent," which would require proof that at the time of the decedent's death the children were "entirely or completely and in fact or reality" dependent upon him for support, would lead to some untoward results. Under such an interpretation, where a custodial parent has even a small amount of income available for support of a child, that child could never be considered "wholly and actually dependent" upon a deceased non-custodial parent; nor could a child with a part-time job; nor a child of two working parents. We do not believe the legislature intended such untoward results to occur.

 In regard to appellant's contention that the statute mentions nothing about a moral obligation to support one's minor child, suffice it to say that a parent has a legal duty to support a minor child. *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979); *Yell v. Yell*, 56 Ark. App. 176, 939 S.W.2d 860 (1997).

 Because the Seventy-Ninth General Assembly made no substantive changes to § 11-9-527 and did not specifically annul

prior case law construing it, we cannot say that prior case law interpreting "wholly and actually dependent" is contrary to or in conflict with the legislative intent, that prior case law must be set aside, or that the Commission's interpretation of the statute was clearly wrong.

Appellant next argues there is no substantial evidence to support the Commission's finding that the children had a reasonable expectation of support and are entitled to dependency benefits. Appellant contends that at the time of his death and for at least five months prior to his death, Mr. Brown was not wholly and actually supporting the children, there was no order of child support, and the children were not even partially dependent upon Mr. Brown at the time of his death.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark v. Peabody Testing Serv.*, 265 Ark. 489, 579 S.W.2d 360 (1979). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

In *Chicago Mill & Lumber, supra,* our supreme court held that persons who are ordinarily recognized in law as dependents, including a wife and children, and to whom the employee owed a duty of support are "wholly dependent." When the widow and children are not living with the employee at the time of his death, there must be some showing of actual dependency. *Roach, supra.* "Actually dependent" does not require total dependency but rather a showing of actual support or a reasonable expectation of support. *Porter Seed Cleaning, Inc., supra.* Dependency is an issue of fact rather than a question of law, and the issue is to be resolved based upon the facts present at the time of the compensable event; it may be based upon proof of either actual support from the decedent or a showing of a reasonable expecta-

tion of support. *Hoskins v. Rogers Cold Storage*, 52 Ark. App 219, 916 S.W.2d 136 (1996). The support being furnished at the time of the worker's injury is important, but conditions prior to the injury should be considered; a reasonable period of time should be used. *Williams, supra.* The fact of dependency is to be determined in the light of prior events and is not to be controlled by an unusual temporary situation. *Roach, supra.*

■ Here, the Commission found testimony regarding the children's dependency to be credible and specifically found that the decedent had provided varying degrees of support to the children. It considered the children's increasing needs as they grow older and found that the children were wholly and actually dependent upon the decedent at the time of his death. Viewing the evidence in the light most favorable to the findings of the Commission, we find there is substantial evidence to support the Commission's award of benefits.

Affirmed.

GRIFFEN, J., agrees; AREY, J., agrees, writing separately.

PITTMAN, JENNINGS, and STROUD, JJ., dissent.

D. FRANKLIN AREY, III, Judge, agreeing and writing separately. I wholeheartedly join in the majority opinion. Nothing in this concurrence should be taken as a disagreement with its analysis. Instead, my purpose in writing is to note what I perceive to be a gap in the dissent's analysis.

Both this court and our supreme court have had several opportunities over the years to construe Ark. Code Ann. § 11-9-527(c) and its predecessors. A good summary of these cases is contained in *Porter Seed Cleaning, Inc. v. Skinner*, 1 Ark. App. 230, 615 S.W.2d 380 (1981). Since the majority opinion and the dissent trace the development of the construction given to § 11-9-527(c), that development will not be recounted here.

These appellate decisions construing § 11-9-527(c) are treated as a part of the statute itself.

> When a statute has been construed, and that construction has been consistently followed for many years, such construction

ought not be changed. As time passes, the interpretation given a statute becomes a part of the statute itself.

*Morris v. McLemore*, 313 Ark. 53, 55, 852 S.W.2d 135, 136 (1993)(citations omitted). Thus, those cases cited in *Porter Seed* collectively give an interpretation of the section that has become a part of the statute itself.

We must assume that the General Assembly is familiar with our interpretation of § 11-9-527(c), and that it knows how to change that interpretation.

> The legislature is presumed to be familiar with this court's interpretation of its statutes, and if it disagrees with those interpretations, it can amend the statutes. Without such amendments, however, this court's interpretation of the statute remains the law.

*Sawyer v. State*, 327 Ark. 421, 424, 938 S.W.2d 843, 845 (1997)(citations omitted). We are bound to follow this rule: those appellate decisions interpreting § 11-9-527(c) remain the law until the legislature amends the statute.[1]

The General Assembly is not oblivious to our opinions. *See* Chuck Smith, *The Influence of the Arkansas Supreme Court's Opinions on Policy Made by the General Assembly: A Case Study*, 18 U. ARK. LITTLE ROCK L.J. 441, 457 (1996). Further, it knows how to correct statutory interpretation with which it disagrees.

> When legislators think the court has misread legislative intent in its interpretation of a statute, a new statute will be enacted, and it will be noted in the legislative finding, in the emergency clause appended to the act, that the legislation is intended to correct the court's interpretation of the statute it amends.

*Id.* at 458 (footnote omitted). The General Assembly's understanding is consistent with *Sawyer*: it knows that if it does not agree with our interpretation of the statute, it must amend the

---

[1] As noted in the majority opinion, Act 796 of 1993 did *not* amend § 11-9-527(c). Therefore, language in § 11-9-1001 noting the General Assembly's intent "to repeal, annul, and hold for naught" prior decisions contrary to "any provision in this act" does not apply to § 11-9-527(c)'s prior interpretation. No substantive provision "in this act" is contrary to § 11-9-527(c).

statute.[2] For examples of the General Assembly acting consistently with this rule in the context of workers' compensation law, see Ark. Code Ann. §§ 11-9-107(e) and 11-9-713(e).

The dissent ignores the supreme court rule articulated in *Sawyer*. The dissent relies solely on § 11-9-704(c)(3); this is a rule of construction. The dissent cites no authority for the proposition that a rule of construction enacted by the legislature should be allowed to "annul" prior case law.

In light of *Sawyer*, I believe our supreme court would require an amendment to § 11-9-527(c) in order to alter that statute's interpretation. Further, it is clear that the General Assembly believes it must enact legislation in order to "annul" prior decisions construing a statute. If the supreme court would require an amendment to change a statute's interpretation, and the General Assembly knows this and acts accordingly, then a rule of construction will not suffice to produce the dissent's result.

JOHN MAUZY PITTMAN, Judge, dissenting. In 1993, the Arkansas General Assembly made sweeping changes to the Workers' Compensation Law. In doing so, it declared that these changes were necessary because the Commission and the courts had frustrated the legislative purpose by continually broadening the scope of the workers' compensation statutes of this state. In keeping with this declaration, the legislature repealed and held for naught all prior opinions or decisions conflicting with any provision of the new Act and, in unmistakable terms, reserved exclusively to itself the power to liberalize or broaden the scope of the workers' compensation statutes. To prevent further unwanted interference with the legislative purpose, the General Assembly diminished our role in the interpretation of the Workers' Compensation Law. Whereas we had formerly and traditionally been entrusted with construing the provisions of the Workers' Compensation Law liberally in accordance with its remedial purpose, in

---

[2] Section 11-9-1001 is consistent with *Sawyer*. In that section, the legislature "acknowledges its responsibility" to change the workers' compensation statutes, and reserves for itself the task of acting if these statutes "need to be liberalized, broadened, or narrowed. . . ." Arguably, the dissent's proposal to narrow § 11-9-527(c) is contrary to § 11-9-1001's legislative declaration.

1993 this trust was withdrawn: we are now required to review the provisions of the Workers' Compensation Law strictly. Despite all of this, the prevailing opinion, employing a strained analysis based on the repealed doctrine of liberal construction, holds that children living with and supported by their mother were *"wholly and actually dependent"* on an absentee father who only occasionally provided them with incidentals, who had not been ordered to pay child support, and, in any event, who flatly refused to pay child support. I dissent.

The legislature announced its clear intent to overturn prior law in Act 796 of 1993, § 35, which declares that:

> The Seventy-Ninth General Assembly realizes that the Arkansas workers' compensation statutes must be revised and amended from time to time. Unfortunately, many of the changes made by this act were necessary because administrative law judges, the Workers' Compensation Commission, and the Arkansas courts have continually broadened the scope and eroded the purpose of the workers' compensation statutes of this state. The Seventy-Ninth General Assembly intends to restate that the major and controlling purpose of workers' compensation is to pay timely temporary and permanent disability benefits to all legitimately injured workers that suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force. When, and if, the workers' compensation statutes of this state need to be changed, the General Assembly acknowledges its responsibility to do so. *It is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act.* In the future, if such things as the statute of limitations, the standard of review by the Workers' Compensation Commission or courts, the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.

Ark. Code Ann. § 11-9-1001 (Repl. 1996) (emphasis added). One "provision in this act" expressly repealed the doctrine of liberal construction formerly applicable to workers' compensation statutes and decreed that the entire Arkansas Workers' Compensation Law was instead to be strictly construed:

> Administrative law judges, the commission, and any reviewing courts shall construe the provisions of this chapter strictly.

Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996).

The statutory provision at issue in the case at bar is Ark. Code Ann. § 11-9-527(c) (Repl. 1996), which provides for death benefits to persons who were "wholly and actually" dependent upon the deceased employee. The interpretation of this language is the precise question before us in this appeal, and we are required by Ark. Code Ann. § 11-9-704(c)(3) to construe this provision strictly. The prevailing opinion does not do so, but instead adopts an analysis squarely grounded on prior opinions employing liberal construction; *i.e.*, opinions employing a standard of construction "contrary to" that enunciated in § 11-9-704(c)(3), and consequently "repealed, annulled, and held for naught" by the unmistakable terms of Ark. Code Ann. § 11-9-1001.

The history of § 11-9-527(c) and its antecedents, and of their interpretation by the courts, provide an excellent example of the steady erosion of the legislative purpose that prompted the General Assembly to minimize the latitude allowed us in construing the workers' compensation statutes. Originally the legislature thought it sufficient to merely state that death benefits were limited to those who were "wholly dependent" on the deceased employee. One of the cases upon which the prevailing opinion is founded defined that term as follows:

> The employer contends that Ark. Stat. 81-1315(c) limits the payment of compensation to those who were *wholly dependent* on the employee at the time of his death. The statute provides: "Subject to the limitations as set out in section 10 (81-1310) of this act, compensation for the death of an employee shall be paid to those persons who are wholly dependent upon him in the following percentage of the average weekly wage of the employee, and in the following order of preference. * * * *"

> *It would be possible to construe this provision of the Act as depriving a widow or child of any compensation when, as here, the husband and father was completely void of any sense of his family obligation. But it is a rule that remedial legislation shall be liberally construed.* We believe the Legislature used the term "wholly dependent" in the sense of applying to those ordinarily recognized in law as dependents, and this would certainly include wife and children.

*Chicago Mill & Lumber Co. v. Smith*, 228 Ark. 876, 878, 310 S.W.2d 803, 805 (1958) (emphasis added). Thus, through liberal construction, the *Chicago Mill* court held that the deceased worker's widow and children were "wholly dependent" upon him for the purpose of receiving death benefits even though the worker had not been contributing to the support of his wife and children prior to his death. Dependency was conclusively presumed. "Wholly" was rendered meaningless.

Following this peculiar interpretation of "wholly dependent," the legislature amended the statute to allow death benefits only to those who were "wholly and actually dependent" upon the deceased employee. The doctrine of liberal construction was firmly in place, and was again referenced, when the supreme court was called upon to decide whether the addition of the word "actually" had imparted any meaning to the requirement that a beneficiary was "wholly" dependent. The court's reluctance to do so is palpable:

> We assume — under our settled law we must assume — that the legislature, in deciding to amend the statute, knew the meaning that we had attributed to "wholly dependent." *Williams v. Edmondson*, 257 Ark. 837, 250 S.W.2d 260 (1975). It unavoidably follows that the addition of the word "actually" was intended to change what amounted to a conclusive presumption of dependency under our prior cases. It follows at least that when, as here, the widow and child were not living with the employee at the time of his death, there must be some showing of actual dependency.

*Roach Manufacturing Co. v. Cole*, 265 Ark. 908, 912, 582 S.W.2d 268, 270 (1979). By construing the statutory language liberally, the *Roach* court concluded that persons having a "reasonable expectation of future support" were "wholly and actually depen-

dent" upon the decedent. "Wholly and actually" meant "perhaps partially."

The legislature amended the workers' compensation law once again in 1993. The changes were extensive and revolutionary. The doctrine of liberal construction was repealed and replaced with strict construction, which is construction of a statute according to its letter, which recognizes nothing that is not expressed, takes the language used in its exact and technical meaning, admits no equitable considerations or implications, and resolves all reasonable doubts against the applicability of the statute to a particular case. BLACK's LAW DICTIONARY 283, 1275 (5th ed. 1979). But despite the fundamental changes in workers' compensation law and the rigorous standard that we are now duty-bound to apply when construing those statutes, the prevailing opinion adheres to the liberally construed definition enunciated in *Roach*; despite the legislature's manifest declaration that we must give its words a literal and reasonable meaning, the prevailing judges still hold that "wholly and actually" means "perhaps partially."[1]

Finally, I should note that this should not be viewed as an isolated case: this is the first time we have been called upon to decide the validity of a statutory interpretation in an opinion that, although not expressly overturned in Act 796 of 1993, is untenable in light of the changes made therein. This case should be seen as an indication of the approach that will be taken in the hundreds of similar cases that have yet to be decided. Because I firmly believe that the prevailing judges' approach is repugnant to the legislature's intent, I must respectfully dissent.

JENNINGS and STROUD, JJ., join in this dissent.

---

[1] The prevailing opinion expresses concern that a strict construction of "wholly and actually dependent" would lead to complete denial of relief in some cases. It should be noted in this context that persons only partially dependent on the deceased employee are entitled to benefits under Ark. Code Ann. § 11-9-527(i) (Repl. 1996).