NATIONAL FIRE INSURANCE COMPANY *v.* YELLOW CAB
COMPANY, INC.

4-7089                                       171 S. W. 2d 927

Opinion delivered May 31, 1943.

*John R. Thompson,* for appellant.
*House, Moses & Holmes,* for appellee.

954

KNOX, J. Since the trial court directed a verdict in favor of appellee we must, on appeal, view the testimony in the light most favorable to appellant, and when so viewed the facts may be stated as follows:

Alighting from a train which arrived at the Missouri Pacific Station in Little Rock, about eleven o'clock in the morning of April 25, 1942, appellant, Mrs. E. F. Metcalf and her daughter-in-law, Mrs. Edwin R. Metcalf, entrusted their seven pieces of baggage to a station porter, (commonly referred to as a red cap), and proceeded to the main entrance of the station. At about the time they reached the entrance of the station a taxicab, belonging to appellee, was driven up, and its passenger discharged. Whereupon these ladies, with the assistance of the "taxi starter" and the red cap, who had followed with their baggage, entered the taxicab. The taxicab was a sedan type of car. Five pieces of their baggage were placed inside the passenger compartment of the car— part on the front seat with the driver, and part on the floor just behind the front seat. Two large bags, however, one belonging to each of the ladies, were placed by the red cap in the rear trunk compartment of the automobile. While the testimony does not show that the "taxi starter" either assisted in placing, or directed the "red cap" to place, these bags in the rear trunk compartment of the car, the jury would have been justified in drawing an inference from the facts and circumstances that the bags were so placed with his full knowledge and consent.

After the baggage was loaded, the driver was directed to, and did drive to the Albert Pike Hotel. It was raining at the time. For some reason, not explained, the driver failed to stop directly in front of the porte cochere. The older Mrs. Metcalf immediately rushed into the hotel to escape the rain, and her daughter-in-law followed as soon as she could pay the driver. At all times while the passengers and their baggage were being loaded at the station and unloaded at the hotel the taxi driver did not leave his seat or assist in any way. At the hotel all of the baggage, except the two bags in the trunk, were unloaded by the hotel porters, and brought

into the hotel lobby, where immediately the ladies discovered the two bags were missing, whereupon they rushed outside, but the taxi had driven away. A rush telephone call to the cab company's office, followed by other calls throughout the afternoon, brought no result. The bags were never found and restored to the owners.

The loss of Mrs. Edwin R. Metcalf was covered by a policy of insurance, issued by appellant, National Fire Insurance Company. It paid the loss, and being subrogated to her claim, it, and Mrs. E. F. Metcalf each filed their separate actions, which were consolidated for trial.

The weight of authority is to the effect that the standards of care which prevail as to common carriers, generally, apply to those engaging in the business of operating taxicabs. 4 Blashfield Automobile Law, § 2201, page 46.

Where a passenger's baggage is surrendered to and placed in the exclusive possession and control of the carrier its responsibility therefor is that of an insurer. *K. C. F. S. & M. R. Co.* v. *M'Gahey*, 63 Ark. 344, 38 S. W. 659, 36 A. L. R. 781, 58 Am. St. Rep. 111; *Strickland* v. *Mo. Pac. Tr. Co.*, 195 Ark. 950, 115 S. W. 2d 830; 10 Am. Jur. 441.

In the case of *Strickland* v. *Mo. Pac. Tr. Co., supra*, the appellant was the only witness. She testified that she bought a ticket for passage on appellee's bus between Little Rock and Russellville; that a porter employed by the bus company placed her handbag in the bus along with baggage of other passengers; that when she got to Russellville her bag was missing. The trial court directed a verdict in favor of the transportation company.

In the opinion reversing the judgment Mr. Justice MEHAFFY quoted with approval 5 R. C. L. 176, as follows: "With regard to hand baggage, the question of the duty and liability of the carrier seems ordinarily to depend upon who has the custody or control of the baggage. If the passenger has entire control and custody to the exclusion of the carrier, then the carrier cannot be held as an insurer, and will not be liable at all, unless guilty of negligence which results in its loss or damage, in the

absence of contributory negligence on the part of the passenger. The element of the degree of control respectively exercised by the passenger and the carrier enters largely into the decisions in the American cases; and the degree of liability varies with the degree of possession. So when a passenger delivers his suitcase to the agent of the carrier for the purpose of having it carried on the conveyance in accordance with the custom of the carrier, it does not, necessarily, become an insurer thereof. Its possession is that of a bailee, and the law of bailments measures its obligation to the plaintiff. Whether it is a bailee for hire performing a service incidental to carriage as a passenger with the obligation of ordinary care, or a gratuitous bailee with the obligation of slight care, the loss of any or all of the property so entrusted to it raises a presumption of negligence which in the absence of explanation makes the carrier liable.'' 195 Ark. 195, 115 S. W. 2d 833.

Although there is little or no dispute in the facts the minds of reasonable men could, we think, draw different conclusions therefrom and, therefore, issues were presented for the determination of the jury.

In the first place it was for the jury to decide, under proper instruction, whether the facts and circumstances surrounding the placing of the two bags in the trunk compartment of the taxicab constituted surrender on the part of the passengers, and assumption by appellee of the exclusive possession and control thereof. Neither the fact that the bags were placed in the trunk by the ''red cap,'' who was not appellee's agent, nor the fact that the taxi driver testified he did not know the bags were placed in the trunk, is conclusive of the question. The evidence shows that the ''taxi starter'' was present at the time, and the jury should have been permitted to determine whether the bags were placed in the trunk with his consent, and, if so, then whether through him the appellee thereby assumed the exclusive custody and control of these two bags.

Appellee stresses the point that the driver took no part in the loading or unloading of the baggage, and argues that he therefore could not have been negligent

with respect thereto. Followed to its natural conclusion the effect of this argument is that a carrier may escape liability for loss of its passenger's effects, provided its servants, agents and employees demonstrate sufficient indifference for the safety thereof.

Negligence may be an act of omission as well as one of commission. The jury might believe that a taxi driver, acting as a reasonably prudent man, would have seen to it that the baggage was both properly loaded and unloaded, and if this had been done in this instance the loss would not have occurred.

Ordinarily a passenger leaving articles in the conveyance upon alighting therefrom cannot hold the carrier responsible, but where it can be shown that the subsequent loss was the proximate result of the wrongful conduct of the carrier's employees, either through their failure to take care of the baggage after full knowledge of the facts, or in any other way, the carrier may be held liable. 13 C. J. S. 1694, § 869.

Mrs. Metcalf testified that immediately upon discovering the loss (about 12 o'clock noon) they phoned the office of the appellee, and were told that nothing could be done about the matter until 6 p. m. when the driver would report there. Yet the driver testified that he called the office from the hotel, and was directed to return to the Union Station for another fare, which he did. Evidently then there was a method of communication between the starter at the station and the cab office, and it can be inferred also that there was a method of communication through which the drivers kept in touch with the office. If these methods of communication had been promptly employed the loss of this baggage might have been averted. At any rate it was a question which should have been submitted to the jury to determine whether appellee's agents failed to exercise ordinary care with respect to the baggage after they were advised that the same had been left in the taxicab, and if so, whether such negligence was the proximate cause of the loss of the baggage.

We are of the opinion that the trial court erred in directing the verdict in favor of appellee. The judgment

will, therefore, be reversed, and the cause remanded for a new trial.