Loree Cavin WILLIAMS, Widow of Ralph
Hollis WILLIAMS, deceased, *v.* C. T.
EDMONDSON, M.D. and H. W. WARD, M.D.

74-169                    250 S.W. 2d 260

Opinion delivered March 17, 1975

838

*Frierson, Walker, Snellgrove & Laser*, by: *David N. Laser,* for appellant.

*Smith, Williams, Friday, Eldredge & Clark* and *Putman, Davis & Bassett,* for appellees.

Conley Byrd, Justice. This medical malpractice action was filed by appellant Loree Cavin Williams, on April 6, 1973, in Benton County, as executrix of the Estate of Ralph Hollis Williams on behalf of both the estate of the decedent and the widow and next of kin. It was alleged that the decedent died February 18, 1973. The complaint in so far as here pertinent with respect to appellee C. T. Edmondson alleged:

"The defendant, C. T. Edmondson, M.D., is a resident of Washington County, Arkansas and is a licensed and practicing physician specializing in the field of radiology and said physician practices among other places, in Benton County, Arkansas, on or about the 7th through the 9th days of April, 1971, at which time said defendant did read and interpret an X-ray taken of the chest of plaintiff's decedent at the Bates Memorial Hospital, Bentonville, Arkansas as further described hereinafter."

The allegation with respect to appellee H. W. Ward is as follows:

> "The defendant, H. W. Ward, M.D., is a licensed and practicing physician specializing in the field of radiology and practicing his profession in Benton and Washington Counties, among other places, and did at all times hereinafter mentioned, practice his specialty in taking, reading and interpreting X-rays, particularly X-rays of plaintiff's decedent's chest made at Bates Memorial Hospital, Bentonville, Benton County, Arkansas, on or about 31st day of March 1970, through the 1st day of April 1970."

The complaint then alleges that Dr. Ward failed to adhere to that degree of care and skill expected and required of him in reading an X-ray of the chest of the decedent Ralph Hollis Williams made in April 1970. A like allegation was made with respect to a chest X-ray read by Dr. Edmondson on April 7, 1971.

Appellant caused summons to be issued and delivered to the sheriff of Washington County. The summons upon Dr. Ward was promptly served at his home in Washington County. The summons issued for Dr. Edmondson was returned unserved on April 11, 1973, with the notation: "Unable to serve. Subject lives in Benton County. per Deputy Colvard." On April 19th, the sheriff's office wrote to appellant's counsel:

"Dear Mr. Williams:

"We are this date returning to Benton County Clerk's office Summons in Circuit Court ref C. T. Edmondson, M.D. defendant in above mentioned case.

Dr. Edmondson does not maintain an office in Washington County. He has a residence in Benton County, 3/4 mile west of Little Wheel Grocery, and comes into Springdale on Tuesdays and Thursdays to read x-rays at the Springdale Memorial Hospital.

However, when we tried to reach him this day, we were advised by Dr. Ward that Dr. Edmondson is on vacation for two weeks.

Yours very truly,

By: /s/ Marjorie Roberts
Civil Process Office

:mr
P.S. The Little Wheel Grocery is on Hwy. 71, north of Springdale."

On April 13, 1973, appellant caused another summons to be issued for Dr. Edmondson directed to the sheriff of Benton County which was served on April 16th.

On July 2, 1973, the trial court sustained Dr. Ward's demurrer to the complaint on the ground that the controlling statute of limitation, Ark. Stat. Ann. § 37-205 (Repl. 1962), had run during decedent's lifetime. On the same day the trial court sustained Dr. Edmondson's motion to quash the summons issued on April 6, 1973, to the sheriff of Washington County.

On July 31, 1973, appellant filed an amended complaint essentially repeating the allegations of the original complaint in so far as the individual acts and omissions of the doctors are concerned but added an allegation that the doctors were partners — by answers subsequently filed the latter allegation is admitted. The trial court sustained a demurrer of Dr. Edmondson to any action on behalf of the estate of the decedent but left standing the action for wrongful death on behalf of the widow and next of kin. A demurrer was sustained on behalf of Dr. Ward as to all allegations except those relating to his vicarious liability for the acts or omissions of Dr. Edmondson under Lord Campbell's Act. Appellant elected to stand upon the pleadings and the trial court entered a dismissal of all actions except as to the wrongful death action by the widow and next of kin against Dr. Edmondson and Dr. Ward's vicarious liability therefor. For reversal appellant raises the issues hereinafter discussed.

POINT I. Appellant here contends that her action filed on April 6, 1973, was properly commenced as against Dr. Edmondson and tolled the applicable statute of limitations, Ark. Stat. Ann. § 37-205 (Repl. 1962). That statute provides:

"Hereafter all actions of contract or tort for malpractice, error, mistake, or failure to treat or cure, against physicians, surgeons, dentists, hospitals, and sanitoria, shall be commenced within two (2) years after the cause of action accrues. The date of the accrual of the cause of action shall be date of the wrongful act complained of, and no other time."

Ark. Stat. Ann. § 27-301 (Repl. 1962), with reference to commencement of actions provides:

"A civil action is commenced by filing in the office of the clerk of the proper court a complaint *and causing a summons to be issued thereon, and placed in the hands of the sheriff of the proper county or counties. . . .*" [Emphasis ours.]

Obviously before Dr. Edmondson can prevail on statute of limitations, he must show that Washington County was not a proper county for the service of the summons. In this connection Ark. Stat. Ann. § 27-330 (Repl. 1962), as to method of service provides that the method of service shall be by personally delivering a copy of the summons to the defendant or by leaving a copy of the summons at the usual place of abode of the defendant with some member of the defendant's family over 15 years of age. Of course, where a summons is directed to a county other than the defendant's residence, we have recognized that actual service will relate back to the date of issuance but that unless the summons is issued to the sheriff of a county where it may be served the issuance thereof does not toll the statute of limitation until it is actually served, *Sims* v. *Miller,* 151 Ark. 377, 236 S.W. 828 (1922). Furthermore, Ark. Stat. Ann. § 27-309 (Repl. 1962), provides:

"The summons shall be made returnable twenty (20) days after the issuance thereof unless otherwise ordered by the court."

In *J. H. Hamlen & Son* v. *Allen*, 186 Ark. 1104, 57 S.W. 2d 1046 (1933), we held that a summons served after the return date thereof, was properly quashed.

However we do not agree that the action of the circuit court in quashing the original summons issued to Washington County on April 6, 1973, was proper. Dr. Edmondson moved to quash the summons, so the burden of proving facts supporting the motion was upon him. *Nix* v. *Dunavant*, 249 Ark. 641, 460 S.W. 2d 762 (1970). In other words, it was up to him to show that Washington County was not a proper county to which the summons could be issued in order to commence the action. The record discloses that the return day of the summons was twenty days after the date of issuance, and that Dr. Edmondson regularly came to the Springdale Memorial Hospital on Tuesdays and Thursdays to read X-rays, but when the Washington County sheriff tried to reach Dr. Edmonson there on April 19, Dr. Ward advised him that Dr. Edmondson was on a two-week vacation. There is no information in the record as to the terminal dates of the vacation. Between April 6, 1973, and April 26, 1973, Tuesdays fell on the 10th, 17th and 24th and Thursdays fell on the 12th, 19th and 26th. It was reasonable to be anticipated that Dr. Edmondson could have been served with summons on any of these dates. The return on the summons was dated April 11 but it remained in the hands of the sheriff of Washington County until he sent it to the attorneys for appellants by letter dated April 19. Since the terminal dates of the vacation were not shown, it is only reasonable to assume that the summons could have been served on Dr. Edmondson on the 10th, 12th or 17th, if that is important. It is also entirely possible that if the summons had not been returned prematurely, it could have been served on the 24th. The point is, there was nothing to show that it was unreasonable for appellants to believe that the summons could be served on Dr. Edmondson in Washington County between April 6 and April 26, 1973. Furthermore, the sheriff was not told that Dr. Edmondson was on vacation until April 19.

In considering the words in the statute now before us [Ark. Stat. Ann. § 27-301 (Repl. 1962)], in only a slightly different context we said that the term "proper county"

(proper court?) used in the statute had been "defined to mean the county of defendant's residence or where the defendant may be served with process." *Sims* v. *Miller,* 151 Ark. 377, 236 S.W. 828 (1922). There we were determining the "proper county" insofar as filing the complaint in a transitory action was concerned. The General Assembly amended the statute by Act 32 of 1961. Prior thereto, and when *Sims* was decided, the pertinent part of the statute read: "A civil action is commenced by filing in the office of the proper court a complaint and causing summons to be issued thereon." The amendment added at the end of this sentence the words "and placed in the hands of the sheriff of *the proper county or counties.*" (Emphasis ours.) In choosing the words "proper county" it certainly should be presumed that the legislature knew the meaning ascribed by us to these words in considering the very statute they were amending. *Brown* v. *Davis,* 226 Ark. 843, 294 S.W. 2d 481 (1956); *Lumbermen's Mut. Cas. Co.* v. *Moses,* 224 Ark. 67, 271 S.W. 2d 780 (1954); *Terral* v. *Terral,* 212 Ark. 221, 205 S.W. 2d 198 (1947); *Texarkana Special School Dist.* v. *Consolidated School Dist. No. 2,* 185 Ark. 213, 46 S.W. 2d 631 (1932). In addition, that body's insertion of the plural as an alternate clearly shows that it was cognizant of the fact that under that definition there could be more than one "proper county." This being so, it is clear in an action that is not transitory, but "local," as this one is, the "proper county" is either the county of defendant's residence or the county where he may be served with process.

In *Roach* v. *Henry,* 186 Ark. 884, 56 S.W. 2d 577 (1933), Roach had filed a motion to quash a garnishment issued in an action against him. He contended that the garnishment was void because no suit had actually been commenced at the time it was issued. He alleged that the sheriff of Chicot County (in which the action had been filed) had failed to find him in the county and had served the summons on a man who was in charge of some equipment for Roach, that the plaintiff's attorney had subsequently caused other process, *i.e.,* a warning order to be issued and that Roach was not a resident of Chicot County, but of the city of Memphis. The respondent stated, under the statements of the complaint and of plaintiff's counsel, which were not denied, that Roach was engaged in levee work in Chicot County and that before and since

filing of the suit, Roach had been in the county from time to time. We held that the filing of the complaint and issuing of summons constituted commencement of the suit and rejected the argument that the garnishment simultaneously issued was void because the defendant had not been served. We also rejected the argument that the subsequent issuance of a garnishment constituted abandonment of the effort to get personal service, saying that one might be a resident of a county and still evade personal service.

Although the record is rather sparse, it is clear that Dr. Edmondson was served with process on April 16, three days before the date of the Washington County sheriff's letter returning the first summons. It is difficult to say whether the information given the sheriff about the vacation was untrue, or the vacation had either ended or not commenced on April 16. In any event, there was an appropriate basis for appellants to believe, in good faith, that Dr. Edmondson could have been served in Washington County within 20 days of the issuance of the first summons, and he probably could have, had the sheriff not first concluded that the summons should have been served in Benton County. Certainly the second summons was not an abandonment of efforts to obtain service. The acts or omissions of the sheriff to whom the writ is directed should and do have no effect in determining whether the action has been commenced. *King v. Circuit Court of Conway County*, 239 Ark. 653, 391 S.W. 2d 24 (1965); *Fitzsimmons v. Rauch*, 197 Okla. 426, 172 P. 2d 633 (1946).

In *St. Louis, A. & T. Ry. Co. v. Shelton*, 57 Ark. 459, 21 S.W. 876 (1893), it was held that even though the service of a summons issued upon filing of a complaint within the prescribed period of limitation was fatally defective and a second summons was issued after the expiration of the period of limitation, the action was not barred because it was commenced when the first summons was issued. This case was cited with approval in *King v. Circuit Court of Conway County, supra; Bridgman v. Drilling*, 218 Ark. 772, 238 S.W. 2d 645 (1951). It is the issuance of a summons and placing it in the hands of the sheriff of the proper county, not its service, that determines the time of commencement of an action. *King v. Circuit Court of Conway County, supra.*

The tolling of the statute by the commencement of the action is, of course, not perpetual, but conditional. The extent to which the statute is tolled seems to depend upon the good faith of the plaintiff in commencement of the action and his diligence in thereafter obtaining service of process, whether in the same county or another. *Emanuel* v. *Richards*, 426 S.W. 2d 716 (Mo. App., 1968); *Korby* v. *Sosnowski*, 339 Mich. 705, 64 N.W. 2d 683 (1954); *Myers* v. *Warren*, 275 Mass. 531, 176 N.E. 600 (1931); *Comen* v. *Miller*, 41 F. 2d 292 (M. D. Pa. 1930).

Finally appellant asserts that the amendment to the complaint alleging a partnership between Dr. Edmondson and Dr. Ward relates back to the filing of the original complaint. Of course, if it does, the complaint would be good as against Dr. Ward's demurrer as to his vicarious liability for the acts of Dr. Edmondson on April 7, 1971.

The general rule seems to be that although made after the expiration of the period of limitations, an amendment to a complaint changing the allegation as to the capacity in which a defendant is sued is permissible, and unless a new cause of action is stated the amendment relates back to the filing of the original complaint. See Annotation 8 ALR 2d 153, § 76. We have permitted such amendments to be made as to both plaintiffs and defendants, *Foster-Holcomb Investment Company* v. *Little Rock Publishing Company*, 151 Ark. 449, 236 S.W. 597 (1922). The only authority that we have been able to find involving an amendment alleging that the parties already sued were partners is *TAORMINA Corporation* v. *Escobedo*, 254 F. 2d 171 (5th Cir. 1958). There the court permitted the amendment to relate back to the date of the filing of the original complaint as to the individual partners before the court upon the original complaint but dismissed as to any of the partners brought in after the statute of limitations had run.

The law with reference to amendment of pleadings was stated in *Bridgman* v. *Drilling*, 218 Ark. 772, 238 S.W. 2d 645 (1951), in this language:

"Our cases hold that where there is an amendment to a complaint stating a new cause of action or bringing

in new parties interested in the controversy, the statute of limitations runs to the date of the amendment and operates as a bar when the statutory period of limitation has already expired. In other words, if the plaintiff amends his complaint after commencement of the suit by introducing a new cause of action, the statute continues to run until the filing of the amendment which does not relate back to the commencement of the suit. *Wood* v. *Wood*, 59 Ark. 441, 27 S.W. 641, 28 L.R.A. 157; *Buck* v. *Davis*, 64 Ark. 345, 42 S.W. 534; *Love* v. *Couch*, 181 Ark. 994, 28 S.W. 2d 1067. If, however, the amendment to the complaint does not set forth a new cause of action, but is merely an expansion or amplification of the cause of action already stated, then the amendment relates back and takes effect as of the date of the commencement of the original action. *Little Rock Traction & Electric Co.* v. *Miller*, 80 Ark. 245, 96 S.W. 993; *Western Coal & Mining Co.* v. *Corkville*, 96 Ark. 387, 131 S.W. 963.

In the case of *Paris Purity Coal Co.* v. *Pendergrass*, 193 Ark. 1031, 104 S.W. 2d 455, we approved the rule stated in 37 C.J. 1068 as follows: 'An amendment of a declaration, petition or complaint which sets up no new cause of action or claim, and makes no new demand relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. This is in substance the language of the statute in some jurisdictions, and the rule applies, although the limitation is by contract and not by statute; and courts have been liberal in allowing amendments expressly to save a case from the statute of limitations when the cause of action is not totally changed.' See, also, 54 C.JS., Limitations of Actions, § 279a; 34 Am. Jur., Limitation of Actions, § 260.''

While parts of the original complaint would indicate that Doctors Ward and Edmondson were intended to be sued individually, other parts of the 10 page complaint allege as follows:

"6. By way of an arrangement, either written or

oral, between the defendant doctors and the Bates Memorial Hospital and/or its staff physicians, said radiologists did agree and bind themselves to furnish treatment and to conduct examinations and interpretations of X-rays of patients in said hospital (in-patient and out-patient) and did on the dates aforesaid serve as the physicians of Ralph Hollis Williams, deceased for the purpose of taking, developing, reading, studying and interpreting and reporting relative to his chest X-rays, and the said defendant doctors did hold themselves out to possess that degree of skill possessed by other radiology specialists and did, in undertaking to handle the radiological portion of decedent's medical care, bind themselves to adhere to that degree of care and skill of a specialist in radiology similarly situated, and did agree to use their best judgment in the administration of said care and skill.

\* \* \*

"7. (c). Both defendant doctors, Dr. Ward and Dr. Edmondson, failed to abide by recognized and established procedures, check lists and protocols relative to their handling of the radiological aspects of plaintiff's decedent's care, and they did fail to comply with the rules, regulations and practices as set out by Specialty Boards in the field of radiology by the Joint Commission on Accreditation of Hospitals and said Commission's rules relative to hospital staff, and they did fail to properly and skillfully furnish to plaintiff's decedent medical care and treatment expected and required of them and reasonably necessary to preserve and protect his health, life and chances of survival at the times heretofore mentioned, and they did further, by their failure to detect radiological evidence of plaintiff's decedent's true condition, cause said evidence of the cancerous condition to be concealed from plaintiff's decedent and his treating physician so that said condition was not discovered until approximately May, 1972; at which time the disease was too widespread to arrest or eradicate.

\* \* \*

"9. As a result of the negligence of these defendants as aforesaid, during the lifetime of plaintiff's decedent as result of the undetected spread of disease in his body, he did suffer extreme pain, . . . "

Thus as against a demurrer, we conclude that the trial court erred in ruling that the statute of limitations had run as to Dr. Ward's vicarious liability for the acts of Dr. Edmondson.

POINT II. Appellant here contends that since neither the acts or omissions alleged to constitute malpractice nor the injury to plaintiff's decedent was discovered nor reasonably discoverable by plaintiff's decedent until May 1972, the statute of limitations did not begin to run until time of discovery. We find that we so construed our statute of limitation in malpractice cases prior to Act 135 of 1935. See *Burton* v. *Tribble*, 189 Ark. 58, 70 S.W. 2d 503 (1935). Since the enactment of Acts 1935, No. 135, following *Burton* v. *Tribble, supra,* we have construed our statute as beginning to run from the date of the wrongful act irrespective of the knowledge or discovery thereof by the patient, *Steel* v. *Gann,* 197 Ark. 480, 123 S.W. 2d 520 (1939). For cases from other jurisdictions reaching the same results, see the annotation in 80 ALR 2d 368, 379.

Appellant alleges that the negligence of the doctors effectively concealed the disease from her deceased husband until other physicians discovered the disorder thereby delaying the commencement of the running of the statute of limitations until the discovery. Appellant also suggests that the negligent interpretation of X-ray films is a continuing tort sufficient to prevent the statute of limitations from beginning to run until appellees had effectively discharged their duty. We do not find sufficient allegations to support the contention that appellees concealed their tort. It is pointed out in the annotation 80 ALR 2d 368, 406 that knowledge of the wrong done on the part of the physician is a necessary prerequisite to a tolling of the statute. We so held in *Crossett Health Center* v. *Croswell,* 221 Ark. 874, 256 S.W. 2d 548 (1953).

The continuing tort theory best addresses itself to the General Assembly who has the responsibility for establishing

the public policy on that issue. Needless to say the only thing alleged is that the appellees were negligent in reading the X-rays and that they were thereafter filed away. Thus by the allegations, the wrong, if any, was completed at the time of the reading.

Appellant also contends that appellees are estopped to plead the statute of limitations because of the fiduciary relationship between the doctor and the patient. Since the nature of the relationship between a physician and his patient was well known to the Legislature at the time of the enactment of the two year statute of limitations, it would appear that the acceptance of appellant's contention would amount to an outright repeal of the statute of limitations. This we do not propose to do.

POINT III. Appellant here for the first time contends the statute of limitations applicable to malpractice actions is unconstitutional. We do not reach a constitutional issue raised for the first time on appeal. Even if we did reach the issue it would appear that we would hold contrary to appellant's position. See *Carter* v. *Hartenstein*, 248 Ark. 1172, 455 S.W. 2d 918 (1970), where we upheld the constitutional validity of a four year statute of limitations applicable to deficiencies in the design, planning and supervision of construction of improvements to real estate.

POINT IV. Appellees suggest that the order of the trial court is not an appealable decree. In so doing they rely upon *Independent Insurance Consultants Inc.* v. *First State Bank of Springdale*, 253 Ark. 779, 489 S.W. 2d 757 (1973). We do not agree with appellees that the order is not appealable because the practical effect of the order was to dismiss all claims of the estate of the decedent from the action. In *Flanagan* v. *Drainage Dist. No. 17*, 176 Ark. 31, 2 S.W. 2d 70 (1928), we held that an order was final and appealable where a distinct and severed branch of the case is finally determined, although the suit is not ended.

In *Matthews* v. *Travelers Indem. Ins. Co.*, 245 Ark. 247, 432 S.W. 2d 485 (1968), we recognized that the malpractice action asserted on behalf of the decedent was a separate cause

of action from the wrongful death action asserted on behalf of the spouse and heirs.

Reversed and remanded.