Cite as 2024 Ark. App. 591

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-564

| | |
|---|---|
| SUZANNE WHITMAN, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF CHARLIE JEAN BRAKEBILL | Opinion Delivered December 4, 2024 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION [NO. 60CV-19-734] |
| V. | |
| ROBINSON NURSING AND REHABILITATION CENTER, LLC | HONORABLE HERBERT WRIGHT, JUDGE |
| APPELLEE | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant, Suzanne Whitman, special administrator of the estate of Charlie Jean Brakebill, appeals the grant of partial summary judgment in favor of appellee, Robinson Nursing and Rehabilitation Center, LLC.[1]  We affirm.

Brakebill, a bedridden woman with dementia, began her residence at the Robinson Nursing and Rehabilitation Center on December 8, 2016, following a broken-left-hip-repair surgery. She developed a pressure sore on her heel first identified on December 15, 2016, which worsened and did not heal. She fell four more times between December 11 and 26, 2016. A December 28, 2016 x-ray revealed that she fractured her left hip again and sustained

---

[1]The briefs refer to "Robinson Nursing and Rehabilitation Center, Inc.," but the order on appeal refers to Robinson as a limited liability corporation.

a dislocation of the original hip implant, but she was not a candidate for another surgical intervention. Brakebill received nursing-home hospice care that included comprehensive care, pain management, and mobility assistance until she died on March 12, 2017.

Brakebill's estate filed a complaint on February 7, 2019, alleging in part that Robinson committed medical malpractice by failing to provide her adequate nursing, custodial, and medical treatment.[2] Robinson motioned for partial summary judgment. Robinson alleged that the two-year statute of limitations (SOL) for any alleged medical malpractice commenced in December 2016 and that her complaint was barred by the SOL. Brakebill's estate argued the medical-malpractice SOL was tolled by the continuous-treatment doctrine so that the February 2019 complaint was timely filed. In particular, the estate asserted that Robinson, classified as a "medical provider" by statute for purposes of medical malpractice, provided Brakebill ongoing medical treatment "for her condition and the conditions relating to her fall [and] the injuries related to the fracture." The circuit court determined the continuous-treatment doctrine to be inapplicable and granted partial summary judgment as to any alleged medical malpractice that occurred prior to February 7, 2017.[3] Whitman argues on appeal that the circuit court erred and that the continuous-

---

[2]Brakebill's estate alleged other counts in her complaint including ordinary negligence, statutory violations of the Arkansas nursing-home resident's rights, and wrongful death.

[3]Typically, this partial summary-judgment order would not be appealable at this juncture. Robinson asserts that the appeal should be dismissed because the circuit court failed to set forth sufficient reasons in its Ark. R. Civ. P. 54(b) certificate to allow for an immediate appeal. Our supreme court has approved Rule 54(b)-certificate findings that it

treatment doctrine tolled the SOL until Brakebill was no longer Robinson's nursing-home resident when she died in March 2017.

On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Grumbles v. Conway Reg'l Med. Ctr., Inc.*, 2024 Ark. App. 354, 690 S.W.3d 818. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.* However, when there is no material dispute as to the facts, we determine on review whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate. *Id.* In other words, when the facts are not at issue but possible inferences therefrom are, the court will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. *Id.*

A medical-malpractice cause of action accrues on the date of the wrongful act and no other time. Ark. Code Ann. § 16-114-203 (Repl. 2016). At issue in this appeal is whether the continuous-treatment doctrine applies to extend the statute of limitations. To date, our supreme court has applied this doctrine in medical-malpractice cases only when the patient

---

would be better to avoid two trials and would serve the parties and the circuit court to permit appeal. *See Dowty v. Riggs*, 2010 Ark. 465, 385 S.W.3d 117; *Howard v. Dallas Morning News, Inc.*, 324 Ark. 91, 918 S.W.2d 178 (1996). We, therefore, do not dismiss the appeal and instead consider the merits.

received active, ongoing medical treatment from a physician. *See Raynor v. Kyser*, 338 Ark. 366, 993 S.W.2d 913 (1999); *Taylor v. Phillips*, 304 Ark. 285, 801 S.W.2d 303 (1990); *Lane v. Lane*, 295 Ark. 671, 752 S.W.2d 25 (1988). Continuous medical treatment is something more than the mere continuation of the physician-patient relationship. *See Ark. Ctr. for Physical Med. & Rehab. v. Magee*, 2017 Ark. App. 657, 536 S.W.3d 152. The doctrine requires a series of negligent acts or a continuing course of improper treatment. *Lane, supra*. The doctrine is inapplicable to cases involving single or isolated acts of negligence. *Magee, supra*. One policy rationale for the continuous-treatment doctrine is to prevent the patient from having to interrupt the physician's treatment to bring suit. *Tullock v. Eck*, 311 Ark. 564, 845 S.W.2d 517 (1993). Whitman concedes that the doctrine has not been applied in Arkansas in the nursing-home context but believes that it should apply and does in this instance.

The plaintiff's expert medical witness testified by deposition that Brakebill suffered from dementia and was completely reliant on nursing care for all her personal needs. She was bedridden and required ambulatory assistance. Upon admission to Robinson, Brakebill was healing from an earlier surgery to treat a broken left hip and was assessed as a high risk for falls. Robinson's staff charted that Brakebill fell four times in a two-week span in December. It was unknown if additional care was not charted or simply not done. Brakebill fell two more times in February 2017, and the pressure sore on her heel became progressively worse. She was given appropriate pain medication, and she died in March.

The physician expert opined that Robinson should have implemented greater fall-avoidance interventions. Brakebill had "slid" out of her wheelchair when she was left

unattended, the bedrails were not consistently in place, the bed alarm was not consistently in operation, and fall-resistant wing-mattress bedding was not always in place. The physician did not have any criticisms of the physician who treated Brakebill at Robinson's facility, but he opined that the fracture she sustained in late December while in nursing-home care contributed to her ultimate demise. The plaintiff's nursing expert witness opined that Robinson correctly assessed Brakebill on admission but failed to change its fall-risk interventions after each of Brakebill's falls in December 2016, which led to her breaking her hip again in late December.

Brakebill's estate contended that the nursing care at Robinson was continuous from her December falls and reinjury and that the nursing home failed to reasonably care for her given her propensity to fall.[4] The continuous-treatment doctrine applies when there is no interruption of "treatment for the malady which was the object of the treatment[.]" *Tullock*, 311 Ark. at 570, 845 S.W.2d 517. The date of the malpractice is binding, and not adhering to that triggering date would come perilously close to embracing a continuous-tort theory, which our supreme court has consistently rejected. *See Tullock*, *supra*.

We agree with the circuit court that the continuous-treatment doctrine does not apply in this instance. Robinson was accused of not preventing Brakebill from falling, and the pinpointed injury suffered due to this aspect of medical malpractice was the left-hip fracture

---

[4]Brakebill's estate failed to acquire a transcript of the hearing on the motion for partial summary judgment. Therefore, we do not have the benefit of considering the oral arguments of the parties or any comments by the circuit court.

she sustained due to falling on or before December 28, 2016. This portion of the medical-malpractice claim against Robinson was barred from consideration because the SOL expired. *See Wright v. Sharma*, 330 Ark. 704, 956 S.W.2d 191 (1997).

Affirmed.

BARRETT, J., agrees.

VIRDEN, J., concurs.

**BART F. VIRDEN, Judge, concurring**. I agree that this case should be affirmed. I write separately only to express my belief that the continuous-treatment doctrine is applicable to nursing homes if the conditions for such, as outlined in the majority opinion, are otherwise met. In this case, however, they were not.

Accordingly, I concur.

*David A. Couch PLLC*, by: *David A. Couch*, for appellant.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellee.